OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1909.

*(Continued from Volume 226)*

CITY OF SEDALIA ex rel. GILSONITE CON-
STRUCTION COMPANY, Appellant, v. JOHN
MONTGOMERY, JR., et al.

In Banc, March 30, 1910.

1. **TAXBILL: Remonstrance: Report of Committee: Rejection.**
   A report of a committee finding that a majority of the resident
   property-owners had not filed a protest against the street pav-
   ing, is conclusively adopted by an ordinance thereafter enacted
   authorizing and directing the improvement. It does not require
   a separate resolution to adopt it, as a necessary precedent step
   to the ordinance—even though the parliamentary code adopted
   by the council for its guidance required a formal resolution.

2. **———: ———: Conclusiveness of Council's Finding.** The
   finding of the city council, either expressly, or implicitly by
   the enactment of the ordinance directing the public improve-
   ment, that the remonstrance against the street pavement had
   not been signed by a majority of the owners of the property
   affected, is not conclusive, but only prima-facie evidence of the
   fact; and though the municipal records recite that the council
   had investigated and found that a majority had not signed

the remonstrance, that fact can be overcome, in a suit on the taxbill, by a showing that a majority had protested; and if such prima-facie showing is satisfactorily overcome, the taxbill is void; for, until the implied approval of the requisite number of property-owners is had through their failure to protest, no jurisdiction exists in the city council to proceed to construct the public improvement.

3. ———: ———: **Withdrawal.** Where the statute gives to the property-owners ten days in which to file a written protest against the proposed public improvement, any such owner may, before the expiration of that time, withdraw his name from the remonstrance theretofore filed, and be counted as among those who favor the improvement. The question for the deter· mination of the council is whether or not the required number of property-owners are remonstrants at the expiration of that time, not whether they have sometime prior thereto been such.

4. ———: ———: **Administrator.** An administrator has no authority to sign a remonstrance against the public improvement which will result in special taxbills being issued against the lands of the heirs. They and not he are the owners.

5. ———: ———: **Corporation.** The officers of a corporation owning land are without authority to bind the corporation by their signature to the remonstrance, unless specially authorized by the board of directors.

Appeal from Franklin Circuit Court.—*Hon. W. C. Davidson,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Geo. P. B. Jackson* for appellant.

(1) The court erred in admitting the papers offered by defendants, without proper proof of their execution and of the facts assumed therein. A paper produced from the files of the city clerk, and purporting to be a remonstrance against a street improvement, and purporting to be signed by forty-three persons, does not prove itself, and is not competent evidence that the persons whose names appear thereon ever signed the paper or authorized any other person to sign for them; and is not competent evidence that such

persons own property abutting upon the street improved and liable to taxation therefor; and is not competent evidence that such persons reside in the city; and is not evidence that such persons constitute a majority of the resident owners of property abutting on the street improved and liable to taxation therefor. Defendant must either prove the signatures, the ownership and residence of the signers and that they constituted a majority of the whole number of resident owners of property liable to taxation for the improvement, or offer evidence which renders such proof unnecessary, that is, that the record of the council shows that the council found that a majority remonstrated. The record of the council is the journal of the council proceedings which the clerk is required by law to keep. This journal should contain a minute of every act of the council. R. S. 1899, secs. 5772 and 5774. In so far as it does so it is competent proof, and the only competent proof, of what the council did. It will be conclusively presumed that the council did just what its journal says it did, no more and no less. The law presumes that public officers have discharged their duties properly. Miller v. Dunn, 62 Mo. 216; Baker v. Underwood, 63 Mo. 384; Chandler v. Bailey, 89 Mo. 641; State ex rel. v. Williams, 99 Mo. 291; State ex rel. v. Wayne Co., 98 Mo. 362; Owen v. Baker, 101 Mo. 407; Bailey v. Winn, 101 Mo. 649; State ex rel. v. Mastin, 103 Mo. 508; St. Joseph v. Farrell, 106 Mo. 437; Leonard v. Sparks, 117 Mo. 103; Mitchener v. Holmes, 117 Mo. 185; State ex rel. v. Bank, 120 Mo. 161. This rule is applied to legislative acts. Railroad v. Jones, 54 Mo. App. 529; State ex rel. v. Slover, 126 Mo. 652; State ex rel. v. Field, 119 Mo. 593; St. Louis Co. v. Griswold, 58 Mo. 175. And especially has it been resorted to to sustain an ordinance authorizing an improvement (a sewer) in a suit on a special taxbill. Rutherford v. Hamilton, 97 Mo. 543. (2) The record shows that the committee counted among the thirty-two signers, one

person who had filed her letter of withdrawal before the remonstrance was filed. Such person had a right to withdraw and should not have been counted. (3) An administrator as such has no right to sign a remonstrance for his decedent. Mulligan v. Smith, 59 Cal. 225; Rector v. Board, 50 Ark. 116; Holland v. Baltimore, 11 Md. 186; Batty v. Hastings, 63 Neb. 26. A conveyance to S. Wright & Son passes the legal title to S. Wright. Hence S. Wright & Son should not have been counted two remonstrants. Arthur v. Weston, 22 Mo. 378; Reinhard v. Mining Co., 107 Mo. 624. (4) The council did not at all times have the power to improve a street, subject to be divested of that power by remonstrance of a majority of the property-owners. The power was only vested through and by means of the action provided in the statute, and at the time when the statute says, ''Then the council shall have power to cause such improvement to be made.'' R. S. 1899, sec. 5860. (a) The provision of the law for filing remonstrance is a method of giving expression to the will of the majority of the property-owners, and, if they favor the improvement, of conferring power upon the council to proceed with the work, and not a means of ''ousting jurisdiction'' or destroying an existing power. Armstrong v. Ogden, 12 Utah 476, 168 U. S. 232; City Lt. Imp. Co. v. Babcock, 123 Cal. 205; Clinton v. Portland, 38 Pac. 407. (b) The property-owners have the right to remonstrate, or withdraw their objections, at any time within the ten days limited by the statute, whether the remonstrance has been filed or not. State v. Gerhardt, 145 Ind. 439; Hays v. Jones, 27 Oh. St. 231; Lanntman v. Maxwell, 154 Ind. 114. (c) And the right of withdrawal exists whether it be from a petition favoring an improvement or a petition (remonstrance) against it. Cases supra and State v. Nemaha Co., 10 Neb. 32; State ex rel. v. Geib, 68 N. W. 1081; Perkins v. Henderson, 68 Miss. 631; Noble v. City, 42 Ind. 130; People v. Sawyer, 52 N. Y. 299; State v.

Ellgleston, 34 Kas. 714; Slingerland v. Norton, 59 Minn. 351; La Londe v. Board, 80 Wis. 380; State v. Supervisors, 60 N. W. 266; State v. Comrs., 52 N. W. (Neb.) 842. The same rule has been applied in proceedings for opening and improving roads. Dunham v. Fox, 100 Ia. 131; Black v. Thompson, 112 Ind. 122; Ralston v. Beall, 30 N. E. 1095; Hays v. Jones, 27 O. St. 218. The same rule obtains in applications to the municipal authorities to call an election upon the question of the surrender of the city charter. Dutton v. Hanover, 42 O. St. 215. So, also, in the case of a petition presented for the purpose of securing the attachment of a part of an unorganized county to another jurisdiction. State v. Commissioners, 73 N. W. 631. So, also, in cases of petitions arising under applications for a license to sell intoxicating liquors. Green v. Smith, 111 Ia. 183; Conwell v. Overmeyer, 145 Ind. 698; Perkins v. Henderson, 68 Miss. 631; State v. Gerhardt, 145 Ind. 439.

*Barnett & Barnett* for respondents.

(1) A majority of the property-owners filed a remonstrance or protest against the proposed improvement within ten days after the publication of the resolution declaring that the council deemed the work necessary. That there was a majority protesting, is shown by the record of the city council. Upon the filing of the protest with forty-three signatures thereto, the council referred the protest, together with certain withdrawals, to a committee of its own body and to the city engineer, together with the city counselor, for investigation as to the sufficiency of the remonstrance. The report of the investigation of that committee discloses the fact that a majority had protested. The committee report that there are sixty-one resident property-owners of whom thirty-two had protested. The council received the report, spread it upon its records, and based its action thereon. There is nothing upon

the record to disclose that it based its action upon any-
thing else. It adopted a method of ascertaining the
sufficiency of the protest, and after having obtained the
facts from its committee, the said council proceeds at
the same meeting to pass the ordinance. The record
clearly shows that the council undertakes to get juris-
diction by assuming the law to be as stated by the city
counselor, i. e., that the parties withdrawing their
names after the protest had been filed should be count-
ed in favor of the improvement. Upon the filing of
such protest the city council ceased to have any juris-
diction to proceed with the work. Laws 1893, p. 92,
sec. 110; Forbis v. Bradbury, 58 Mo. App. 506. (a)
The proceedings of the council upon their face show
that a sufficient protest was filed within the time pre-
scribed by law. By submitting the matter to a com-
mittee, especially to the street and alley committee, an
appropriate committee to determine the facts, in con-
nection with the city engineer and the city counselor,
and by receiving and placing on file the report of such
officers, and by introducing the ordinance and putting
it upon its passage at the same meeting, the city coun-
cil have in effect found that the facts that they thus
spread upon their records as ascertained by their offi-
cers are true and correct, and this record, taken as a
whole, constitutes the findings of the city council that
a majority of the property-owners had protested with-
in the prescribed ten days and constituted a finding
that the council based their right to proceed, not upon
the ground that the majority had not protested, but on
the sole ground that they had acquired jurisdiction by
reason of the withdrawal of names sufficient to reduce
the protest to a number of names less than a majority,
and such action of the council makes the adjudication
of the committee the adjudication of the council.
Knopfli v. Gilsonite Co., 92 Mo. App. 290; Wilson v.
Simmons, 36 Atl. 380; Allen v. Portland, 58 Pac. 513;
Sedalia ex rel. v. Scott, 104 Mo. App. 595. (b)    In

matters of this kind the record of the proceedings must on its face show a compliance with all the conditions made necessary by the statute to a valid exercise of the taxing power. In other words the proceedings must bear upon their face the evidence of the jurisdiction, and the facts which confer jurisdiction must in fact exist. Morris v. Omaha, 93 N. W. (Neb.) 735; John v. Connell, 89 N. W. 806; Miller v. Amsterdam, 149 N. Y. 297; Ogden v. Armstrong, 168 U. S. 224. (2) The court did not err in refusing to permit oral evidence to contradict the record. See authorities above cited. (3) The report of the committee to whom the matter was referred is a part of the record. Waln v. Philadelphia, 99 Pa. St. 377. (4) There is no merit in appellant's contention that the remonstrance does not prove itself, is not competent evidence that the persons who appear thereon ever signed the paper or authorized any other person to sign for them, and is not proper evidence that such persons own property abutting on the street. Pacific Co. v. Gallett, 69 Pac. 985. (5) Upon the filing of the protest containing a majority of the property-owners the council ceased to have jurisdiction. Under the very language of the statute, if a majority of the property-owners file their protest within the prescribed time, then the council has no power to proceed. The mere filing of the protest ousts the council of jurisdiction. Upon such filing the proceedings were dead and could not be revived or restored to life by the subsequent withdrawal of any number of names. Upon such filing the remonstrance became a public document. It had done its work, had destroyed the proceedings, and no individual had any control of it; neither had they any authority to erase their names or direct their names to be erased. Upon the filing of such protest the power of the council to move in the matter ceased, or rather it never acquired power or jurisdiction to proceed until the time for protesting had expired without a legal protest be-

ing filed. Laws 1893, p. 92, sec. 110; Laws 1893, p. 35, sec. 1; Brewing Co. v. Jersey City, 42 N. J. L. 575; Vanderbeck v. Jersey City, 44 N. J. L. 626; Armstrong v. Ogden, 43 Pac. 119; Roebling v. Trenton, 32 Atl. 635; Clinton v. Portland, 26 Or. 410; Light Co. v. Los Angeles, 106 Cal. 156; Knopfli v. Gilsonite Co., 92 Mo. App. 290; Sedalia ex rel. v. Scott, supra; City Imp. Co. v. Babcock, 123 Cal. 205; Grinnell v. Adams, 34 O. St. 44; Lomis v. Bailey, 45 Ia. 400; Koppel v. Hendricks, 1 Barb. 449; Tapley v. Martin, 116 Mass. 275; Upton v. Railroad, 25 N. J. Eq. 372; Mollay v. Torrence, 9 Wheat. 537; Cook v. United States, 2 Wall. 218; Dunham v. Ins. Co., 46 Tex. 182. (6) The property-owners are not parties to the contract for such improvements. The proceedings as to them are in invitum, and their property is not affected unless it is brought within the strict meaning of the statute. Such grants of power hold out temptations and opportunities for the confiscation of property to such an extent that the protection of property rights demands that they should receive the very strictest construction, and the courts should be insistent that the proceedings should be of the utmost regularity. Morse v. Omaha, 93 N. W. 734; Hutchinson v. Omaha, 52 Neb. 345; Sedalia ex rel. v. Scott, supra; Thornton v. Clinton, 148 Mo. 663; Leavitt v. Bell, 55 Neb. 57; Medlund v. Linton, 82 N. W. 866; Chicago v. Nodeck, 67 N. E. 39.

FOX, J.—This suit originated in January, 1902, and was brought by the plaintiff in the circuit court of Pettis county, in which it was sought to recover the respective amounts due upon special taxbills which were issued by the city of Sedalia in payment for paving west Sixth street in said city.

The record discloses that during the progress of this controversy, by proper orders, other parties were made defendants, either by substitution or by being permitted to enter their appearance in the cause.

The record also discloses that there was a stipulation filed by the parties interested changing the venue of said cause from the county of Pettis to the county of Franklin, and in pursuance of such stipulation all the record and proceedings in the cause were transmitted to the circuit court of Franklin county. The cause came on for trial before the Franklin Circuit Court; a jury being waived, the cause was submitted to the court. After a hearing of the evidence there was a finding by the court sitting as a jury, for the defendants, and judgment was entered in accordance with such finding. From this judgment the plaintiff prosecuted an appeal to the St. Louis Court of Appeals, and that court, upon hearing, reached the conclusion that the judgment of the circuit court of Franklin county was erroneous and should be reversed; however, the learned and esteemed judge who wrote the opinion very frankly stated that the conclusions as reached in the opinion, in which his associates concurred, were in conflict with the opinion of the Kansas City Court of Appeals, as expressed in Knopfi v. Gilsonite Roofing & Paving Co., 92 Mo. App. 279, and the City of Sedalia ex rel. v. Scott, 104 Mo. App. 595; hence it followed that an order was made certifying this case to the Supreme Court, and it is now before us for consideration.

As was said by the St. Louis Court of Appeals, the opinion and conclusions reached in the case at bar are directly in conflict with the opinion announced by the Kansas City Court of Appeals in the cases referred to. The leading and controlling propositions in these cases, to which reference is made, are substantially the same, and the respective Courts of Appeal in the solution of the propositions involved, gave them very careful attention and consideration. The authorities are collated and reviewed, and very little, if anything, can be added to the views of those courts, as expressed in the opinions. It is simply a difference between those

courts as to the proper interpretation and application of the law applicable to the legal propositions disclosed by the records in the cases before them.

We have, with great care, examined and analyzed in detail the facts disclosed by the record, as developed upon the trial of this cause. We have read and re-read the opinions by the learned and esteemed judges of the respective Courts of Appeal, that is, the Kansas City Court of Appeals and the St. Louis Court of Appeals, wherein the propositions involved in those proceedings are fully discussed. It is sufficient to say that the opinion and conclusions reached by the St. Louis Court of Appeals are in harmony with the views of this court. The opinion of the St. Louis Court of Appeals, of which we have signified our approval, is as follows:

"This, an action on special taxbills, part of the issue in payment for paving west Sixth street, in the city of Sedalia, originated January, 1902, in the circuit court of Pettis county, primarily against John Montgomery, Jr., and Rollingsford Savings Bank, as joint defendants.

"The petition was subdivided into three counts upon a like number of taxbills, each count (with appropriate modification and passing by the formal statements) averring that on the tenth of February, 1898, the authorized officers as officials of the city of Sedalia, issued the bill, under the ordinance referred to against the realty described, to the Gilsonite Roofing and Paving Company, assignor of the relator, describing the interests of defendants in the realty and asking judgment. The defendants entered their appearances to the action on the day it was brought, and filed a stipulation signed by them for judgment at the ensuing December term, if prior payment of the bills had not been made, and in event of payment before such December term, the case was to be dismissed. In April, 1902, by consent, the stipulation was withdrawn and defendants, by attorney, filed a joint answer admitting the usual

conventional affirmations of the petition, but averred that within the period provided by law a majority of the resident owners of property on the street liable for taxation for the proposed improvement, duly filed their remonstrance against it, whereby the city council of Sedalia had no power to cause such improvement to be made; that notwithstanding such protest and want of authority, the council unlawfully passed an ordinance, No. 207, July 19, 1897, providing for the pavement of the street; the contract was awarded to relator and the work completed by it at the contract price and accepted by the city council, which passed an ordinance directing the issuance of special taxbills in payment and against the parcels of realty abutting on the street improved. The answer proceeded to set out the respective interests of defendants severally as owner and mortgagor and mortgagee of the realty, and terminated with apt allegations of the invalidity of the taxbills and prayer for their cancellation.

"The reply of plaintiff specifically denied the remonstrance by a majority of the resident owners of property on Sixth street liable for taxation and for the improvement against such improvement, and the consequent absence of power in the city council to cause the improvement, and averred that the pretended remonstrance was not signed by such majority; that many of the signers were not owners of abutting property, at the time of signing such remonstrance or when it was filed; that within the period legally fixed and before the remonstrance was filed, after the remonstrance was filed and before the expiration of the time appointed, six of the parties signing, by writing filed with the city clerk, withdrew their names and petitioned to have the street improved as provided by the resolution of the council. At the same time there was filed a stipulation for change of venue to the circuit court of Franklin county, and also by the attorney of various other owners of parcels of realty fronting on the reconstruct-

ed street, against which similar taxbills had issued, a verified suggestion and motion as *amicus curiae,* averring and charging that there were no adverse interests involved in such action, but the interests of the opposite parties were identical and the plaintiff and defendants had conspired to impose upon the court a pretended controversy, that the action was a fictitious proceeding in which the parties collusively sought, by medium of removal of the cause to a county within the jurisdiction of the St. Louis Court of Appeals, to obtain a decision of the latter court, overturning the decision of the Kansas City Court of Appeals adjudging the same special taxbills invalid and thereby ultimately secure a certification of the case to the Supreme Court, wherein defendants would seek to insure judgments against themselves, thus defeating defendants in other cases affecting the validity of like bills. The motion and suggestions concluded with a prayer to have the cause stricken from the docket, or a refusal to transfer the cause to any court outside of the jurisdiction of the Kansas City Court of Appeals. The court withheld any immediate action and in the interim W. E. Bard, Jr., by attorney, interposed for leave to become a party, as successor to interest of the defendant Montgomery; January, 1903, the court overruled the motion of the *amicus curiae* and awarded a change of venue to the circuit court of Franklin county, where, in July, 1903, Bard was made a party and entered his appearance as defendant, and on the same day Lee Montgomery, alleging he had succeeded Bard in interest in lot numbered 3, described in the petition, was admitted as defendant, and with Bard adopted the answer of the original defendants, and a non-jury trial resulted in judgment for defendants, from which this appeal followed.

"The improvement was made and the taxbills were issued under sections 108, 109 and 110 of an act of the Thirty-sixth General Assembly, repealing article 4, chapter 30, Revised Statutes 1899, and substituting a

new article providing for the government of cities of the third class (Laws 1892-3, p. 65) especially section 110, providing that, 'When the council shall deem it necessary to pave, etc., any street within the limits of the city for which a special tax is to be levied, as herein provided, the council shall, by resolution, declare such work or improvement necessary to be done, and cause such resolution to be published in some newspaper published in the city for two consecutive weeks; and if a majority of the resident owners of the property liable to taxation therefor shall not, within ten days thereafter, file with the clerk of the city their protest against such improvements, then the council shall have power to cause such improvements to be made and to contract therefor and to levy the tax as herein provided.' The publication of the resolution of the council was completed June 6, 1897, thus confining the ten days' limit within which the remonstrance should be presented, to June 16th, and June 14th such instrument was filed with the city clerk, to which names of owners of forty-one parcels of realty appeared to be subscribed. It was admitted that one signer, Fannie Hortshorn, withdrew her name from the remonstrance before it was filed, and that six of those remaining had filed with the clerk the day following its filing, their written withdrawals and request for erasure of their names from the protest before its consideration by the council; at regular session June 21st, the remonstrance, together with the communications of withdrawal of signers, was read, referred to a special committee composed of the city counselor, the city engineer and the street and alley committee of the council, whose report signed by the city engineer and two of the three members of the street and alley committee, with opinion of the city counselor attached, was returned June 28th, received and placed on file; the ordinance for the reconstruction was thereupon introduced and subsequently duly passed. The report of the committee announced that the

total number of resident property-owners was sixty-one, the number of signers to the remonstrance, thirty-two, deducting names withdrawn, five, left twenty-seven counted on the remonstrance, and number left in favor, thirty-four, and further embodied that the names of the parties competent to be counted for or against the paving had been determined upon the advice of the city counselor, as shown in the letter appended; the opinion of the city counselor addressed to the city engineer in reply to the questions pertinent hereto, particularly what constituted a resident owner of property, whether a person signing a remonstrance could change the effect of his signature, so as to be counted for instead of against the pavement, when made in form of a written request signed and filed before the time for the remonstrance expired, and whether an administrator could sign a remonstrance and be counted where property of the estate fronted on the street, contained his opinion defining resident ownership, replying in the affirmative to the second inquiry and expressing the conclusion that an administrator for reasons assigned was without authority to sign in favor of or remonstrate against such improvement.

"At the trial plaintiff rested after tender in evidence of the special taxbills, their assignment to plaintiff being admitted, and defendants introduced the testimony following: the resolution of the council to improve the street, proof that the two weeks' publication terminated June 6, 1897; the minutes of the council to the effect that a remonstrance against paving Sixth street was read, also communications from Fannie Hortshorn and other property-owners named, six in number, asking that their names be erased from the remonstrance, were read and on motion referred to the city counselor, the street and alley committee and city engineer for investigation; the remonstrance bearing names of forty-three subscribers, the report of the above named committee, the letter or opinion of the

city counselor, the letters of withdrawal from the re-
monstrance, one of Fannie Hortshorn and one with six
signatures dated June 14th and filed June 15th; the
minutes of the council of June 28, 1897, showing report
of the committee, and that on motion of its non-signing
member, the report was received and placed on file and
finally the ordinance itself.

"Plaintiff, in rebuttal, tendered the testimony of
the city engineer, that various subscribers, including
Fannie Hortshorn, had been included in estimate of
total signers, that some of the names of the remon-
strants out of the thirty-two counted were not signa-
tures of such parties, and that they did not authorize
any one to sign for them, but at objection of defend-
ants, all such testimony was excluded. Plaintiff offer-
ed further testimony impeaching other signatures to
the remonstrance as illegal and unauthorized and that
in lieu of sixty-one resident owners of property liable
to taxation on the part of the street improved, there
were eighty-two such owners entitled to remonstrate,
all of which was excluded as incompetent in tending to
contradict the findings of the council. Plaintiff further
introduced the rules of the city council then in force,
particularly that section adopting 'Cushing's Manual'
and designated sections of 'Cushing's Manual' and con-
cluded with part of the minutes of the council of June
28th, indicative of the fact that after the above motion
was carried, a tardy member appeared, took his seat
and the council assumed consideration of a measure
of grave importance to the city, namely, an ordinance
authorizing the issue of refunding bonds in a substan-
tial amount, which was put upon its first reading.

"1. At the portal of the cause, we are faced with
a revival and reiteration of the charges of collusion
between the parties confronting each other as plaintiff
and defendants. While it is indisputable that legal
tribunals are not created to hear and decide moot cases,
and that lawsuits contemplate adverse parties and hos-

tile interests, and courts will refuse to entertain proceedings inaugurated and designed to affect the rights of third parties, strangers thereto, whereby such actions cease to be antagonistic, and are rendered collusive (Meeker v. Straat, Admr., 38 Mo. App. 239; State ex rel. v. Westport, 135 Mo. 120), yet this record is devoid of any evidence sustaining such arraignment and being largely an issue of fact, the denial of the motion by the circuit court of Pettis county, where the action was commenced, will go far in controlling such question; and no reason has been exhibited to overthrow its discretionary action or requiring any disturbance of its ruling in this regard.

"2.   The contention of respondents, summarized in the language of their counsel, is that when the remonstrance was filed and thereafter certain withdrawals were made therefrom and the council referred the matter to a committee for investigation, which reported that it found sixty-one resident property-owners, of whom thirty-two had by remonstrance filed a protest against the proposed improvement, but of the qualified parties signing the remonstrance five had withdrawn, thus leaving but twenty-seven remonstrating; and further reporting that the committee had determined the qualification of those remonstrating upon the opinion of the city counselor filed with the report, and which report of the committee was received and placed on file, that such report became part of the record, when the council contemporaneously passed an ordinance directing the improvement and the passage of such ordinance constituted, in legal effect, the adoption of the report, and disclosed the theory of the council upon which the latter ascertained and determined the remonstrance insufficient, and constituted a conclusive declaration by the record, that it had acquired jurisdiction to enact the ordinance by reason of the withdrawals attempted after the protest had been filed; that the law made imperative and essential that the record should disclose

lawful authority to make the improvement, and such record evinced that the council had found that a majority filing the remonstrance had been converted into a minority by the withdrawals, and thereupon as the record itself displayed a want of power and jurisdiction, neither the city nor the owners of the taxbills could contradict such record, but the latter upon its face must disclose jurisdiction. Respondents further contended that a remonstrance, containing a majority of the resident property-owners, when filed with the city clerk, conclusively ousted the jurisdiction of the city council to continue with the contemplated improvement, and the power could not be restored by withdrawal of names thereafter, and the council, therefore, was debarred from progressing except by proceedings anew. The situation, therefore, may be elucidated into the simple inquiries whether defendants established by competent proof that a remonstrance, over the signatures of the requisite majority of the qualified owners of property subject to assessment for the improvement, was filed, and if such duly signed protest was presented, then whether plaintiff should have been accorded the right of impeaching or assailing the signatures thereto, or was such protest thus executed and tendered final and conclusive. It is urged by appellant that the disposition of the report of the committee employed was ambiguous and indefinite and its mere reception did not constitute an adoption because not fixed upon by resolution.

"By putting the ordinance for the paving upon its passage after such action upon the report, the council adopted the latter in as effective a manner as if by formal resolution and motion, and if such action was not in strict accord with the sections of the parliamentary code adopted for guidance of the council's deliberations, that body, as every deliberative body, reserved the discretionary right to exercise, formally or infor-

mally, at its pleasure, the power of suspension, waiver or modification of such rules. [Holt v. City of Somerville, 127 Mass. 411.; Bennett v. New Bedford, 110 Mass. 433.] The result of the action of the council was in effect a finding that under the law a majority of the qualified owners had not executed the remonstrance, and this conclusion of the council, illustrated by putting the ordinance upon its passage, was assailed, not by proof that in fact a legal majority of such qualified owners had remonstrated, but by an endeavor to indicate a fatal infirmity and legal defect in the process by which such conclusion was attained. To sustain such contention it was made essential for respondents to concede that the committee found that a legal majority did not protest, but arrogating the right to reject, as not conclusive, such decision of the committee, and affirm that the record itself attested that such majority did remonstrate and the council was shorn of power to proceed with the improvement.

"The inquiry whether the conclusion of the council upon the validity and sufficiency of a petition in favor of, or in protest against, the performance of such public work is a final adjudication, involving decision of a jurisdictional fact, has received opposing answers and has been solved at variance in different jurisdictions. The view expressed in an earlier case by this court appears to negative the conclusiveness of such decision in the absence of express legislative power. In Fruin-Bambrick Con. Co. v. Geist, 37 Mo. App. 509, an action upon a special taxbill issued for improvement of an alley in the city of St. Louis, the defendants resisted recovery upon the ground, among others, that a remonstrance against the proposed improvement of the alley had been signed by the owners of more than the requisite major part of the property in the block intersected by the alley, and the court pertinently says: 'It appears inferentially from the record that the board of public improvements decided that the remonstrance

was not signed by the owners of a major part of the block, and the appellant contends that the finding of this fact by the board of public improvements was conclusive. We cannot consent to this. This was a jurisdictional fact and the decision of the board of public improvements, in the absence of an express legislative provision to that effect, would not be conclusive.' A like rule obtains in the State of New York, announced in Miller v. City of Amsterdam, 149 N. Y. 288. [City of Bloomington v. Reeves, 177 Ill. 161; Cummings v. Comrs., 181 Ill. 136.]

"An eminent commentator, in his admirable treatise on the law of taxation, in the chapter devoted to taxation by special assessment, under heading 'Municipal Action,' expressed the following view: 'Municipalities having no inherent power in these cases, it is necessary to the validity of their action that they keep closely to the authority conferred. Their ordinances and resolutions must be adopted in due form of law, and they must keep within them afterwards. They can bind the taxpayers only in the mode prescribed, and can substitute no other. Their legislative action, if properly taken, is conclusive of the propriety of the proposed improvement, and of the benefits that will result, if it covers that subject, but it will not conclude as to the preliminary conditions to any action at all; such, for example, as that there shall be in fact such a street as they undertake to provide for the improvement of, or that the particular improvement shall be petitioned for or assented to by a majority or some other defined proportion of the parties concerned. This last provision is justly regarded as of very great importance, and a failure to observe it will be fatal at any stage in the proceedings. And any decision or certificate of the proper authorities, that the requisite application or consent had been made, would not be conclusive, but might be disproved.' [2 Cooley on Taxation (3 Ed.), p. 1243.]

"In a venerable decision from the State of New York, being ejectment for land to which title was asserted by virtue of an assessment and sale for improvement in the then village of Brooklyn, the court says: 'The defendant insists that the petition conferred jurisdiction on the trustees to lay out a well and pump district, etc., provided they should judge that a majority of the persons intended to be benefited had signed; that by granting the petition and proceeding with the work, the trustees adjudicated upon the question, and determined that a majority had petitioned; and that this judgment of the trustees is conclusive upon all persons so long as it remains unreversed. It is impossible to maintain that in this matter the trustees were sitting as a court of justice, with power to conclude any one by their determination. True, they were called upon to decide for themselves whether a case had arisen in which it was proper for them to act. But they acted at their peril. They could not make the occasion by resolving that it existed. They had power to proceed if a majority petitioned, but without such a petition they had no authority whetever. They could not create the power by resolving that they had it.' [Sharp v. Speir, 4 Hill (N. Y.) 76.]

"The same conclusion is given expression in Allen v. City of Portland, 35 Oregon 420, the court therein stating: 'But the question as to its (i. e., the common council's) jurisdiction to act in any given case, like courts of limited, special and inferior jurisdiction, is always open to inquiry; and, in any event, its decision or determination may be attacked collaterally for want of such jurisdiction. It cannot legally assume to act until the facts exist upon which its jurisdiction depends, and no decision or determination that it has, can avail in the absence of such facts. By the express charter provisions, it is not to give notice, or act in the exercise of the power delegated, until the requisite petition is filed; and its judgment that it conforms to the

requirements of the charter could not make it so, if it was otherwise, or give it validity *in invitum*. [Cagwin v. Town of Hancock, 84 N. Y. 532.] Notwithstanding, the council is bound to exercise its judgment in determining whether a valid petition has been presented, and this it does for the purpose of ascertaining whether it is warranted in taking further action under it, yet its judgment is not conclusive unless made so by express legislation, and such is not the case under the charter. Inquiry may be made, therefore, with respect to the fact of jurisdiction, in a proceeding to enjoin the collection of an assessment purporting to have been made by and through the authority of the council.' [Alpin v. Fisher, 84 Mich. 128; Ogden City v. Armstrong, 168 U. S. 224.]

"The sounder and better sustained view would seem that the *ex parte* decision of the council in such matters is but prima facie and presumptive, in the absence of direct conclusive power clearly conferred by the Legislature, and if such conclusions be not merely legislative or ministerial in their character and even if treated as of a quasi-judicial nature, they are not final and the council record or journal is merely evidence of the action of the body, not absolute proof of the verity and correctness of the decision itself; for upon the fact respecting the remonstrance the jurisdiction or power of the council to act is made dependent. This authority of the city council is not a continuous power subsisting, but subject to be divested by the filing of a protest containing the prescribed quota of qualified objectors, but more properly it may be defined as a right, dormant and inert, until animated by the will of the majority of the resident property-owners liable to be assessed for the intended improvement, whose assent is implied from absence of majority protest. Such power by tacit assent, implied of those not affirmatively expressing their dissent by protest, is awakened to set in motion and render operative the

legal machinery of the statute empowering the improvement. The language employed in the Act of 1893 is appropriate for such construction. Section 110 recites 'and if a majority of the resident owners of the property liable to taxation therefor, shall not within ten days thereafter, file with the clerk of the city their protest against such improvements, then the council shall have *power* to cause such improvement to be made,' etc. The Supreme Court of the United States, in explicit terms, has given weight to the proposition that under such conditions no jurisdiction exists to construct the improvements until the implied approval of a majority of the property-owners is had through their failure to object. In Armstrong v. Ogden, first found reported in 12 Utah 476, and on final appeal in 168 U. S. 232, the ruling of the court was invited upon a bill against the municipal corporation and its mayor and members of its common council to restrain the city and its officers from levying assessments upon the realty of plaintiff, and others in like situation, for the purpose of paving a street of the city. The act under which the taxbills were sought to be issued, provided for public notice of the improvement to be advertised in manner and form defined, and proceeding embodied: 'If, at or before the time so fixed, written objections to such improvements signed by the owners of one-half of the front feet abutting upon that portion of the street, avenue or alley to be so improved be not filed with the recorder, the council shall be deemed to have acquired jurisdiction to order the making of such improvements.' Judge SHIRAS, expressing the opinion of the court, said: 'We agree with the courts below in thinking that no jurisdiction vested in the city council to make an assessment or to levy a tax for such an improvement, until and unless the assent of the requisite proportion of the owners of the property to be affected, had been obtained, and that the action of the city

council in finding the fact of such assent was not conclusive, as against those who duly protested. The fact of consent by the requisite number, in this case to be manifested by failure to object, is jurisdictional, and in the nature of a condition precedent to the exercise of the power.'

"In the State of California, the statute governing public work of like character was decided to necessarily import that if such protest had been filed, jurisdiction shall not be deemed to have been acquired. [City Street Improvement Co. v. Babcock, 123 Cal. 205.]

"The Supreme Court of Oregon, in Clinton v. City of Portland, 38 Pac. 407, says: 'Section 27 of said article 6 authorizes the common council to improve a street, without giving notice of its intention to do so, when the owners of two-thirds of the adjacent property petition therefor, and section 3, supra, authorizes an improvement if no remonstrance by the owners of a majority of the property adjacent thereto be filed within ten days after the final publication of the council's notice of intention to make the improvement. The charter thus provides two methods of *acquiring* jurisdiction to improve a street,' etc.

"While not interpreting words identical with those of the act under consideration, but construing language of similar purport, the above authorities strongly incline to the conclusion that the conferring or withholding of power or authority, and not the ousting of jurisdiction pre-existing, is involved in the filing of the remonstrance under the provisions of such statutory enactments. This section established a time limit of ten days within which objection to the improvement might be announced, and until the expiration of such period, the power of the council did not become fixed or defined, and no sufficient reason has been assigned why a party in interest, who in the first instance joined the protestants, by attaching his name

to the remonstrance thereafter, for reasons satisfactory to himself, might not recede from such position and ratify or assent to the proposed work. It would seem but logical and reasonable to permit qualified names to be subscribed to the remonstrance, until it was matured for action by the council, and it is difficult to perceive why right of more positive change of purpose should not be permitted a signer of the protest within the period appointed. No direct authority, other than hereinbefore alluded to, has been produced upon this branch of the controversy, but judicial rulings under analogous conditions are not lacking. The practical answer to the possible difficulties ensuing from the various situations so easily conceivable under such construction is that to all parties, whether favorable or hostile to the contemplated improvements, notice is imputed, that, until the expiration of the statutory interval, the intention of the qualified property-owners is not finally expressed, but until the ten days has ended may vary and is subject to reversal on reconsideration.

"Decisions which may be of guidance, while not express authority, may be found in proceedings under the laws of the various States to secure liquor licenses, establish drainage districts and locate county seats, or public roads. In Sauntman v. Maxwell, 154 Ind. 114, a proceeding under a drainage act allowing ten days after docketing of the petition for landowners to object, the remonstrance against the proposed drain was likened to a remonstrance against the granting of a liquor license, and it was therein ruled that any remonstrant had the right to withdraw within the period fixed, whether the remonstrance had been filed or not, and after the ten days had elapsed the question for determination on the petition and remonstrance was whether or not the required number of qualified landowners were remonstrants at the expiration of such period. [State v. Gerhardt, 145 Ind. 439.] In Ohio

it has been held that resident landholders, who have subscribed a petition for road improvement, may, at any time prior to such improvement being finally ordered, withdraw their assent by remonstrance or have their names stricken from the petition. [Hays v. Jones, 27 Ohio St. 218.] In Iowa, in Green v. Smith, 111 Iowa 183, distinguishing earlier cases in 45 Iowa 400, and 47 Iowa 390, it was held that a voter, signing a statement of consent to the sale of liquors under the statute, could withdraw his consent after it is filed, and before it was acted on by the board of supervisors, upon which was imposed the duty of a public canvass of such statement after ten days' notice had been given of such intended canvass.

"In other states the same principle has obtained recognition and has been applied. [State v. Nemaha County, 10 Neb. 32; State ex rel. v. Geib, 68 N. W. 1081; Perkins v. Henderson, 68 Miss. 631.] The following apt language justifies its citation: 'A remonstrance is defined to be a petition to a court or deliberative body, in which those who have signed it request that something which it is in contemplation to perform shall not be done. There would seem to be nothing irrevocable in the signing of a petition. We conclude that when the petitioners signed and presented to the council the remonstrance, protesting against that for which they had petitioned, and withdrawing their names from the petition, it stood, so far as they were concerned, as though they had never signed it. Was the remonstrance in time to counteract the effect of the petition? We think it was. The petition had been presented to the council, and it had been referred to a committee of the council when the remonstrance was filed. No other steps had been taken by the council until the petitioners had withdrawn their names from the petition. In our opinion, there had not been, at that time, any binding and conclusive action of the council upon the petition. No right had accrued in

favor of anyone, or which could be enforced by anyone.' [Noble v. Vincennes, 42 Ind. 125.]

"Also the following discussion of the question taken from People v. Sawyer, 52 N. Y. 296: 'The question in the present case is, can a petitioner, after signing a petition and becoming an applicant by its presentation to the judge, thereafter, and before the testimony is closed, withdraw as an applicant, and have his name and taxable property excluded from the computation of the applicants? It is said that he cannot, for the reason . . . that signing the petition is equivalent to casting a ballot in the affirmative, and that a signer is concluded by signing, the same as a voter at an election by actually handing in and having his ballot deposited in the box. I am unable to see any analogy in the cases. No one has any interest in the petition except the signers. . . .

" 'It is further urged that a taxpayer, by signing the petition, is estopped by the relation thus entered into with the other signers from thereafter withdrawing therefrom. . . . The signer of the petition acquired no right and conferred none upon any other thereby. . . .

" 'It is also said that to permit him to withdraw would be a fraud upon the other signers. But . . . all the right that anyone has, is to have his own name counted and his taxable property computed by the judge in determining the case.

" 'It is argued that the right given to appear upon the hearing and request to unite in the petition, while the statute makes no provision for the withdrawal therefrom by those who have signed, shows that the Legislature did not intend that the latter should have any such right. . . . It was not necessary that the statute should give the right to withdraw. This right the law gives petitioners, unless prohibited by the statute.

" 'It is said that the others may have been induced

to incur expense upon the faith of his signature in the further prosecution of the proceeding. The answer to this is, that if any of them have incurred expense, it was on their own account, and in furtherance of their own purposes. Signing the petition conferred no right upon another to expend money on the faith of the signature. No such inference can fairly be made.

" 'A signer cannot be estopped from withdrawing upon the ground that he has induced another to act upon the faith of his signature, who will be prejudiced thereby. Besides, signing the petition is only a representation that he is then in favor. . . . It is not a promise that he will not exercise his right to withdraw in case he changes his mind upon further information.

" 'The allowance of the right to withdraw will tend to prevent fraud in procuring signatures, as signatures so procured would be almost certain to become useless by the exercise of the right by the person induced to sign.'

"Appealing again to the provisions of the statute under which the bills were issued, section 113 declares: 'Such special taxbills shall in any action thereon, be prima-facie evidence of the regularity of the proceeding for such special assessments, of the validity of the bill, of the doing of the work and furnishing of the materials charged for, and of the liability of the property to the charge stated in the bills.' Upon the introduction of the bills in evidence, they constituted presumptive proof of all essentials to recovery and the burden devolved upon defendant to establish the omission of some material step or disprove some substantial element in the proceedings.

"From the foregoing premises, we derive the conclusions that the journal of the council kept by the clerk in obedience to the statute (R. S. 1899, secs. 5772-74) inclusive of the report of its committee, was competent proof of the proceedings of the council, but did not prohibit disproof of or inquiry into the exist-

ence of the facts prerequisite to exercise of the power to cause the improvement to be made, and the validity of the protest was subject to impeachment by evidence controverting the ownership and authority of the subscribers thereto; that the name of the subscriber to the remonstrance, who had filed her letter of withdrawal before the protest was filed, should have been excluded from computation among the remonstrants; that the signature of the administrator, the mere personal representative of his intestate, was not the owner of realty of the estate within the statute and could not bind the heirs, the true owners of the realty liable to the charge, and he acted without authority and beyond his powers in so attempting by signing. [Mulligan v. Smith, 59 Cal. 206; Rector v. Board, 50 Ark. 116; Batty v. City of Hastings, 63 Neb. 26.] The conveyance in the firm name vested sole title only in the party named and he alone should have been counted as a single remonstrant. [Reinhard v. Lead, etc., Co., 107 Mo. 616.] The officers of the corporate landowners, unless specially authorized by the board of directors, were without power to bind the corporations by their signatures. [Morse v. City of Omaha, 93 N. W. 734.] That remonstrants had the right of withdrawing their signatures until the expiration of the period prescribed; and from the record, as introduced by defendant, less than a majority of legally qualified remonstrants remained subscribers of the protest at the expiration of the time limit; the council therefore had the power to proceed with the improvement, the issue of taxbills in payment therefor was valid, and the judgment of the circuit court of Franklin county should be reversed.''

This opinion was written by Judge REYBURN and concurred in by his associates, BLAND, P. J., and GOODE, J. [109 Mo. App. 197.]

It will be observed that this case has some features which were not involved in the cases determined by the

Kansas City Court of Appeals, but as to the leading and controlling propositions these cases presented the same questions. The reasoning by the respective Courts of Appeals in the opinions announced upon the legal propositions now in hand may be said to be entirely sound when we get beyond the major premise on which each opinion is founded, but the essential point of difference between the two opinions is the starting point in the argument. If the statute confers on the city council, in the first place, the complete jurisdiction to cause the street to be reconstructed at the expense of the owners of abutting property, but authorizes a majority of the property-owners to annul that authority in a given case by filing their remonstrance, then when the remonstrance is filed the jurisdiction in that case is annulled and the remonstrators cannot by withdrawing the remonstrance re-confer the jurisdiction. That is substantially the ruling of the Kansas City Court of Appeals. But on the other hand if the statute does not confer on the city council, in the first instance, complete jurisdiction, but confers it only conditionally, that is, confers the right to propose by an appropriate resolution to do the act, subject to the will of the majority of the abutting property-owners, such will to be expressed within a given period, then the jurisdiction over the subject-matter is in abeyance until that period has elapsed. Under the provisions of the statute the property-owners may, within a given period, put a stop to the improvement, and they might, by non-action within that period, signify their approval, and when by such non-action that approval is signified, the jurisdiction, in other words, the power on the part of the city council, to do the act proposed, is conferred, but not until the lapse of that period is the jurisdiction and power thus conferred complete. During the ten-day period in which abutting property-owners have the right by non-action to approve the proposed improvement, or by their affirmative action to disap-

prove it, the power and jurisdiction of the city council to take any steps concerning the proposed improvement is in abeyance; hence the filing of the remonstrance during that period does not, in any way, annul the jurisdiction of the city council, for the reason that during that period there is no jurisdiction to annul. That is substantially the ruling of the St. Louis Court of Appeals upon the leading and controlling proposition involved in this proceeding.

Manifestly the statute referred to in the opinion herein indicated does not contemplate that the city council shall exercise any power or jurisdiction concerning the improvement of any street within the limits of the city until after the expiration of the ten-day period mentioned in the statute. In other words, this statute informs the city council that if it desires to make certain improvements in the streets it shall first declare such work or improvement necessary; secondly, it must give notice to the public and property-owners by an appropriate publication which is designated in the statute. Here the power of the city council to proceed further toward making the improvement is suspended awaiting the subsequent action of the property-owners. In other words, at this point the statute in effect says to the city council: "You may make the improvements suggested by the resolution provided a majority of the abutting property-owners are willing, and you may have ten days in which to ascertain that fact, and if at the end of that period there is not before you a remonstrance signed by a majority of the property-owners you may infer that it meets their approval, and then, but not until then, your jurisdiction attaches. During that period therefore there is no power or jurisdiction either to annul or to be re-created.

In our opinion the reasonable interpretation of the provisions of that statute is that the property-owners have the full period in which to express their approval

or disapproval. The signing of the remonstrance expresses their disapproval, but withdrawing it or withdrawing their names from it expresses their approval, and this they may do up to the last day.

Having given expression to our approval of the views and conclusions reached by the St. Louis Court of Appeals, as herein indicated, it results in the conclusion that the judgment of the Franklin Circuit Court should be reversed, and the cause remanded with directions that the court enter judgment in favor of the plaintiff and against the defendants upon the respective taxbills involved in this proceeding. It is so ordered.

*Valliant, C. J., Burgess, Gantt, Woodson* and *Graves, JJ.,* concur; *Lamm, J.,* not sitting.