# Town of Woodlawn *v.* Cain.

*Bill in Equity to enjoin the Levy of an Additional Tax.*

1. *Constitutional law; what necessary for municipality to levy additional taxes.*—Under the provisions of the constitution of 1901, authorizing certain named cities to levy a tax in addition to the tax authorized for municipalities generally throughout the State, and providing for the submission of the question, as to whether the additional taxes should be levied and collected, to a vote of the qualified electors of said cities at a special election to be held for that purpose, (Const., 1901, § 216), where the taxes proposed to be levied are for two or more purposes, it is necessary that the propositions, embodying the purposes for which the proposed tax is to be levied, should be separately submitted to the voters of said municipality, so that if any voter is in favor of the increased tax for one purpose, and opposed to the other purpose, he can have an opportunity of expressing himself separately as to each proposition.

APPEAL from the City Court of Birmingham, in Equity.

Heard before the Hon. W. W. WILKERSON.

The appeal in this case was prosecuted from a decree of the judge of the city court of Birmingham, sitting as chancellor, granting the relief prayed for by the appellee, J. A. Cain, in a bill in equity restraining the appellant, the Town of Woodlawn, from the levy of an additional tax by said municipality alleged to have been authorized by a vote of the citizens of the town of

Woodlawn. The facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

KENNEDY & WHITAKER, for appellant.—The fact that two propositions were submitted at an election does not render the election void, or affect the validity of the bonds.—*Maybin v. Biloxi*, 28 So. Rep. 566.

Technical defects and irregularities should be overlooked; and the courts will sustain the tax whenever sufficient appears to make plain the intent of the orators, provided the intent is warranted by law.—Cooley on Taxation, p. 337, and authorities; *School District v. Garvey*, 80 Ky. 163.

WEAKLEY & WEAKLEY, *contra.*—It has been held in numerous cases that the proposition to issue bonds for dinstinct purposes cannot be combined so as to give the voter no opportunity to express himself separately as to each. The principles involved are the same as here. The only proper way to comply with the requirements of the Constitution and procure authority to levy a tax for several distinct purposes is to make a separate submission, as to each, specifying the rate of tax to be devoted to each.—*Village of Hempstead v. Seymour*, 34 Wisc. R. N. 92; *Gas & Water Co. v. Elyria*, 57 Ohio State, 374; *Fulton Co. v. Railroad*, 21 Ill. 338; *McBride v. City of Monte Sano*, 34 Pac. Rep. 559; Simonton on Municipal Bonds, § 73; *Gray v. Mount*, 45 Iowa, 595; *Lewis v. Commissioners*, 12 Kan. 213.

McCLELLAN, C. J.—So much of section 216 (Art. XI) of the constitution of 1901 as bears on this case, is as follows: "No city, town, village or other municipal corporation, other than as prescribed in this article, shall levy or collect a higher rate of taxation in any one year on the property situated therein than one-half of one per centum of the value of such property as assessed for state taxation during the preceding year, * * provided,. further, that this section shall not apply to Troy, Attalla, Gadsden, Woodlawn, Brewton,. Pratt

[Town of Woodlawn v. Cain.]

City, Ensley, Wylam and Avondale, which cities and towns may, from and after the ratification of this constitution, levy and collect an additional tax of not exceeding one-half of one per centum; but this additional tax shall not be levied   *   *   *   unless authorized by a majority vote of the qualified electors voting at a special election held for the purpose of ascertaining whether or not said tax shall be levied; and provided further, that the purposes for which said special tax is sought to be levied shall be stated in such election call, and, if authorized, the revenue derived from such special tax shall be used for no other purpose than that stated;   *   *   *   provided, further, that the governing boards of said cities which are authorized to levy an additional tax after the holding of an election as aforesaid, are hereby authorized to provide by ordinance the necessary machinery for holding said election, and declaring the result thereof."   Intending to proceed under and in accordance with this section of the constitution, the mayor and aldermen of the town of Woodlawn on April 8, 1902, adopted an ordinance calling an election to be held on April 22, 1902, "for the purpose of submitting to the qualified electors of said town for their determination by ballot whether or not they will authorize and empower the said board of mayor and aldermen of the town of Woodlawn to levy and collect an additional tax of one-half of one *per cent. per annum,* or so much thereof as the board may deem necessary, on the real and personal property in said town of Woodlawn for the purpose of paying interest on the negotiable bonds of said town of Woodlawn to be issued to the amount of twenty-five thousand ($25,000) dollars, maturing twenty years from date, bearing interest at the rate of five *per cent. per annum*, and authorized to be issued by an act of the General Assembly of Alabama, approved December 13th, 1900, and for the purpose of making and maintaining public improvements."   A further provision of said ordinance is this: "That the form of the official ballot to be used in said election shall be as follows:   Shall the board of mayor and aldermen of the town of Woodlawn be authorized to levy and collect an additional tax of one-half of one

[Town of Woodlawn v. Cain.]

*per cent. per annum,* or so much thereof as the board
may deem necessary, upon the real and personal prop-
erty situated in the town of Woodlawn for the purpose
of paying the interest on the negotiable bonds to the
amount of twenty-five thousand dollars ($25,000) to be
issued under the authority of an act of the General As-
sembly of Alabama, approved December 13th, 1900, and
for the purpose of making and maintaining public im-
provements? (Put a cross mark (X) in front of the
proposition you vote for.)  Yes ——; No ——." In
and by the same ordinance said mayor and aldermen
provided the machinery for the holding of the election
thereby called and for declaring the result thereof. An
election was held under this ordinance, and it resulted
favorably to the authorization for the levy of the pro-
posed additional tax for the purposes of paying interest
on the bonds referred to in the call and of making and
maintaining public improvements, and this result was
declared.    Thereupon J. A. Cain, a resident citizen and
taxpayer of the town of Woodlawn, filed this bill
against said town, setting up the facts we have stated
and praying that the town be enjoined from levying the
proposed additional tax of one-half of one per cent. for
the purposes stated, on the ground "that said election
was not held in the proper manner and said tax was not
properly voted, for the reason that in submitting the
question to the qualified voters of Woodlawn two propo-
sitions were submitted but only one opportunity to vote
was allowed." The contention of complainant stated
in the bill being "that the two propositions should have
been separately submitted, so that if any voter was in
favor of an increased tax for one purpose, and opposed
to the other, he could have an opportunity to vote ac-
cordingly," etc., etc. The respondent answered, admit-
ting the facts averred in the bill and shown by the ex-
hibits thereto, and upon submission for final decree
on bill, exhibits and answer, there was decree granting
the relief prayed and perpetually enjoining the levy of
said proposed additional tax. In the course of his opin-
ion filed in the cause, and now before us, the chancellor,
after stating the constitutional provision under which

the town had attempted to proceed, went on to say: "So it is apparent that this power to levy the additional tax is not a general and unqualified power, but it is a power to levy for a designated purpose or purposes. Such purpose or purposes must be favored by the voters and their wishes as to such purpose or purposes must be determined by a special election, and if any contemplated purpose shall not be favored by a majority of those voting then no additional tax shall be levied for 'that purpose.' The constitution says nothing about the manner of holding such election except 'that the purposes for which such special tax is sought to be levied shall be stated in such election call.' But it is apparent that the election shall be held in such a way as to obtain an expression of the wishes of the voters upon the contemplated purpose or purposes. It is the manifest meaning of the constitution that no money shall be raised or appropriated under this excepting clause for any purpose that the people do not want it applied to. The wishes of the voters must determine the matter and not the wishes of the councilmen or aldermen or those persons charged with the duty of submitting the matter to the people and of arranging the details of the election, and if an election is held under such condition as that it is impossible to determine the mind of the voters upon the purpose or each of the several purposes of the contemplated tax, such election fails to establish a proper base on which to rest the additional tax provided for in the exception of section 216. A voter might favor one purpose and oppose another, and he should be able in the election to so express himself. In the cause under consideration, it was sought to be determined by an election whether this additional tax should be levied by the town of Woodlawn for two separate and distinct and unconnected purposes, one to pay interest on $25,000 of new 5 per cent. bonds with which it proposed to compromise and settle an old debt of $32,000, bearing 8 per cent. interest, the other to make and maintain public improvements. By the method prescribed for holding the election the voters were compelled to vote *for the tax for both purposes*, or to vote *against the tax for either purpose*. There was no

method provided by which a voter might express his wish for the tax for one purpose, and his opposition to the tax for another purpose. So the result of the election could not be an expression of the will of the voters or any part of them upon either proposition. All of them may have favored the purpose by which the debt could be decreased and paid and all may have opposed the making at that time of other public improvements, by additional taxation. Yet as both propositions must stand or fall together a majority of the voters may have been willing to sacrifice their opposition to the public improvements for the sake of securing the favorable debt settlement. The result would be that an additional tax would be levied and collected and applied to the making of public improvements, which nobody wanted, contrary to the wishes of all the people and contrary to the clear intention of the constitution. Had the details of the election been so arranged that each voter could have expressed his mind upon each several contemplated purpose then the tax might have been authorized for one purpose and denied for another and the constitutional provision carried out that the revenue derived from such special tax shall be used for no other purpose than *that stated*. While there is no suggestion of any such design, and doubtless none existed, to declare an election of this kind valid would be to take from the people the right and power to control in this matter of additional taxation, and vest it exclusively practically in those charged with the duty of calling the election, for they could defeat any measure, however beneficial and popular, by coupling with it a proposition ruinous and altogether objectionable, and they could secure many undesirable and vicious measures by coupling with them others necessary to the welfare of the community. The constitutional requirement is fulfilled when the additional tax is levied and applied to such purposes as a majority of the voters by their votes declare; it is prevented when the tax is levied for any purpose and the proceeds applied to any purpose which a majority of the voters do not advocate, and there can be no other way of determining what pur-

poses the voters advocate and what they oppose than by separate expressions upon the several purposes. *Village of Hempstead v. Leymond*, 34 Wisc. R. N. 92; *Fulton Co. v. Railroad*, 21 Ill. 328; *McBride v. City of Monte Sano*, 34 Pac. Rep. 559; Simonton on Municipal Bond, § 75; *Gas & Water Co. v. Elyria*, 57 Ohio St. 374."

We fully indorse these views of the chancellor, and adopt them as the opinion of this court; and, of necessary consequence, concur in his conclusion that the complainant is entitled to the relief prayed. In the case of *Maybin v. City of Biloxi*, 28 So. Rep. 566, relied on by appellant, there were two propositions submitted to the people at one election, but they were submitted *separately*, so that case cannot be an authority against the conclusion we have reached in this.

Affirmed.