[Civ. No. 2417. Fourth Appellate District.—April 26, 1939.]

HOLLIS H. KNOWLTON, Appellant, v. FRED C. HEZ-MALHALCH, City Clerk, etc., Respondent.

420

Sam L. Collins and Harold A. McCabe for Appellant.

Lloyd S. Verry and George H. Holden for Respondent.

GRIFFIN, J.—This is an appeal by petitioner from a judgment made and entered by the Superior Court of Orange County dismissing the petition for a writ of mandate seeking to compel respondent city clerk of the city of Fullerton to certify a certain referendum petition and supplement thereto as sufficient. A demurrer by respondent to the petition was sustained without leave to amend and a judgment of dismissal was entered pursuant to the order.

The appeal involves the question whether the petition for writ of mandate states facts sufficient to constitute a cause of action against respondent. Summarizing the petition, we find that appellant therein alleges: (1) Petitioner is a taxpayer and qualified elector of the city of Fullerton. (2) That respondent is the duly elected, qualified and acting city clerk of the city of Fullerton. (3) A referendum petition was filed in the office of the respondent city clerk on August 20, 1938 (exhibit "A"). The referendum petition contained signatures of 626 registered qualified electors of said city and the total number of qualified electors of said city was 6,122. (4) On August 29, 1938, respondent city clerk made and filed his certificate applicable to the signatures on said referendum petition and a true copy of such certificate is annexed as exhibit "B". (5) A supplemental referendum petition was filed in the office of the respondent city clerk on September 8. 1938 (exhibit "A"), it being in the exact form of the original referendum petition, and there was attached thereto the signatures of 100 registered qualified electors of said city. (6) On September 17, 1938, the respondent city clerk made and filed his certificate applicable to the signatures on said supplemental petition (exhibit "C"). (7) On August 25, 1938, requests for the withdrawal of names from the original referendum petition were made and filed in the office of the respondent city clerk (exhibit "D"). (8) On August 27, 1938, further requests for the withdrawal of names from the original referendum petition were made and filed in the office of the respondent city clerk (exhibit "E"). (9) Certain other requests for the withdrawal of names from the original referendum petition were made and filed in the office of the respondent city clerk (exhibit "F"). The requests were so made and filed on the dates set opposite the respective names in said exhibit. (10) All of said requests for withdrawal were

for names appearing on the original referendum petition, and were subsequent to the date of the filing thereof in the office of the respondent city clerk. (11) No requests for the withdrawal of names from said petitions were considered by respondent city clerk other than those therein set forth, and all such signatures were disallowed by respondent solely upon the ground of said withdrawals and for no other reason. (12) Respondent failed to examine and from the records of registration ascertain whether said petitions were sufficient, in that he allowed and certified to certain requests for the withdrawal of names, as hereinbefore alleged, and failed to certify and count, as registered qualified electors, certain other names appearing on said referendum petitions.

The petition concludes with a prayer that a writ of mandate issue, directing respondent either to certify said original and supplemental petitions, or to show cause why he should not be compelled to certify the said petitions as sufficient, to totally disregard all requests for withdrawal of names from the original petition subsequent to the filing thereof in the office of respondent, and to certify to other names appearing on said petition as the names of registered qualified electors of the city of Fullerton.

Exhibit "A", attached to the petition, purports to be a referendum petition, directed to the city council of the city of Fullerton, and reads as follows:

"We, the undersigned registered, qualified electors of the City of Fullerton, California, hereby protest against the passage of a legislative act or acts passed by you on July 22, 1938, and August 2, 1938, as hereinafter set forth, and hereby request that your honorable body reconsider and entirely repeal the same or submit the question of the passage of the said legislative act or acts to the vote of the electors, either at a regular municipal election or a special municipal election called for the purpose. Said legislative act or acts are as follows and are numbered I to III inclusive.

"I.

"Part of the Minutes of a Regularly Adjourned Meeting of the City Council Held at the City Hall 7:30 p. m. July 22, '38.

"The Mayor stated that on investigation as to the purchase of possible sites for a City Hall, the two most likely proved to be the Northwest corner of Highland and Commonwealth,

a total footage of 242 feet for $27,800.00, and the Northeast corner, a total of 225 feet for $25,050.00. The latter being not only a saving of $3,250.00 over the price of two years ago but the lowest in price for the present location, the Council had decided to purchase same for the City Hall Site.

"RESOLUTION NUMBER *920*.

"A Resolution of the City Council of the City of Fullerton Directing the Purchase of Certain Real Property.

"Was read and on motion duly seconded, passed. . . .

"On motion of Councilman Muckenthaler, seconded by Councilman Kohlenberger, the following Minute Resolution was unanimously carried: . . .

"Whereas, the City Council of the City of Fullerton has elected to purchase certain real property in the City of Fullerton and

"Resolved, That there is hereby appropriated from the General Fund of the City of Fullerton the sum of $25,050.00, to be used for the purchase of said real property, and the proper city officials are hereby authorized and empowered to draw from the said General Fund a sum not exceeding $25,-050.00, and are directed to deposit the same immediately, or as soon as escrow instructions have been written and deposited in escrow with escrow officer, handling the escrow in the purchase of said real property.

"II.

"RESOLUTION NUMBER *920*.

"A Resolution of the City Council of the City of Fullerton, Directing the Purchase of Certain Real Property.

"Whereas, There exists a necessity for the immediate purchase of a certain real property situated in the City of Fullerton; and

"Whereas, It is deemed advisable and very advantageous and for the best interests of the City of Fullerton to purchase that certain property situated at the northeast corner of Commonwealth and Highland Avenues in the City of Fullerton; and

"Whereas, The City of Fullerton has secured options looking to the purchase of the property described in this Resolution for the sum of $25,050.00; and

"Whereas, It appears that said sum of $25,050.00 is a fair and reasonable price for said property; now therefore be it

"Resolved, By the City Council of the City of Fullerton in a regularly adjourned meeting that the City of Fullerton purchase the following property, to wit: (legal description) and that T. K. Gowen, one of its members, the City Clerk, and the Assistant City Attorney be and they are hereby directed and empowered to consummate said purchase for the City of Fullerton before the option expiration date; and said T. K. Gowen and the Assistant City Attorney and City Clerk are hereby directed and authorized to open an escrow and do any and all acts necessary or convenient and proper to consummate the immediate purchase of this property. . . . ''

There is appended to the foregoing the certificate of the city clerk that the foregoing resolution was unanimously passed at a regularly adjourned meeting of the city council held on July 22, 1938. There also appears the mayor's signed approval of said resolution.

"III.

"Part of the Minutes of Regular Meeting of City Council Held at the City Hall 7:30 p. m. August 2, 1938.

"MINUTE RESOLUTION

"It was moved by Councilman Kohlenberger and seconded by Councilman Cole and unanimously carried

"That the following described property situated in the City of Fullerton, Orange County, California, now the property of the City of Fullerton, to wit: (legal description) be and the same is hereby designated as a site for a City Hall and that steps be taken immediately looking to the construction of the City Hall for the City of Fullerton on said property.

"MINUTE RESOLUTION

"It was moved by Councilman Muckenthaler and seconded by Councilman Bowen and unanimously carried

"That G. Stanley Wilson, architect, be directed and authorized to proceed with plans and take all necessary steps for a W. P. A. project for construction of a City Hall on the property described as (legal description) and that the City Engineer, City Attorney, and other city officials lend G. Stanley Wilson such assistance in said project as may be neces-

sary or convenient for an early construction of said City Hall.''

Exhibit ''B'', attached to the petition, purports to be the certification by respondent city clerk to the referendum petition, and recites in substance as follows: Respondent has examined the names on the referendum petition filed with him, and finds that there are 626 signatures thereon, and that 57 of the persons who signed the same are not eligible to vote, because they are not registered or have not correctly signed the petition. He further certifies that he has filed in his office requests from 59 of the signers of said petition to have their names withdrawn therefrom, thus leaving only 510 good and sufficient signatures on said petition; that there are 6,122 registered electors in the city of Fullerton, and that signatures of 612 qualified electors are necessary for certification of the referendum petition as sufficient; and that the petition does not have sufficient signatures of registered qualified electors, as required by law. The certification is signed by respondent and is dated August 29, 1938.

Exhibit ''C'', attached to the petition, purports to be the certification of respondent city clerk to the supplemental referendum petition, and recites in substance as follows: Respondent certifies that he has examined the supplemental petition filed with him, and finds that there are 100 names thereon, and that 6 of the persons whose names appear thereon are not eligible to vote because they are not duly registered qualified electors, leaving 94 valid registered qualified electors; that there were 510 good and sufficient signatures on the original petition, which, with the 94 signatures, makes a total of 604 names; that since the certification of the original petition, requests have been received from 11 of the persons who signed the petitions to have their names withdrawn therefrom, leaving a total of 593 names on the original and supplemental petitions; that there are 6,122 registered electors in the city of Fullerton, and the total number of signatures required for certification of a referendum petition is 613; and that the petition as filed, together with the supplemental petition, does not have sufficient signatures as required by law.

Exhibit ''D'' attached to said petition, consists of a request for the withdrawal of the names of two registered qualified

electors of the city of Fullerton from the referendum petition, and is marked as filed on August 25, 1938.

Exhibit "E", attached to the petition, is a similar request for withdrawal from the referendum petition of the names of 56 registered qualified electors of the city of Fullerton, filed August 27, 1938.

Exhibit "F", attached to the petition, is a similar request for the withdrawal from the referendum petition of the names of 11 registered qualified electors of the city of Fullerton. Four of said requests are marked as filed September 6, 1938, two as filed September 10, 1938, and three as filed September 12, 1938.

On October 7, 1938, respondent city clerk filed a demurrer to the petition for writ of mandate and for grounds of demurrer alleged that (1) the petition failed to state facts sufficient to constitute a cause of action against respondent; and (2) that the petition was uncertain, ambiguous and indefinite in that in paragraphs 3 and 5 thereof it could not be ascertained what portions or sections of exhibit "A" are legislative acts; nor what portions or sections of said exhibit are requested to be submitted to the electors by reason of said referendum petition; nor that said alleged referendum petition was ever presented to the legislative body of said city, as required by law.

The main question presented on this appeal may be stated thus: Was the respondent clerk clothed with authority to withdraw the names or to allow names to be withdrawn from the referendum petition after it had been filed with him under the circumstances related and to disregard those names requested to be withdrawn in making his certificate and return? If this authority to withdraw the names existed and the certificate of the clerk as issued reflects the correct result of his examination from the records of registration, then the petition falls short of having the required number of qualified voters necessary to refer any legislative act to the electorate. Otherwise, the referendum petition is signed by a sufficient number of qualified electors of the city.

The statute applicable to the referendum herein sought to be invoked is the City Initiative and Referendum Law (Stats. 1917, p. 655, as amended, Deering's Gen. Laws 1937, Act 3651) section one of which provides in part:

"Except an ordinance calling or otherwise relating to an election, no ordinance passed by the legislative body of a city or town . . . shall go into effect before thirty days from its final passage.

"And if, during said thirty days, a petition, signed by not less than ten per cent of the electors of such city or town, protesting against the passage of such ordinance, be presented to the legislative body, the same shall thereupon be suspended from going into operation, and it shall be the duty of the legislative body to reconsider such ordinance. If said legislative body shall thereupon not entirely repeal said ordinance, it shall submit the same to a vote of the electors either at a regular municipal election or a special election to be called for the purpose, and such ordinance shall not go into effect or become operative unless a majority of the voters voting upon the same shall vote in favor thereof. Such petitions and the provisions of the law relative to the duty of the clerk in regard thereto and the manner of voting thereon, shall conform to the rules provided therein for the initiation of legislation by the electors."

Some of the provisions of the act in reference to initiation of legislation by the electors are:

"Ordinances may be enacted by and for any incorporated city or town of the state in the manner following: Any proposed ordinance may be submitted to the legislative body of such city or town by a petition *filed with the clerk of such legislative body* after being signed by qualified electors of the city or town not less in number than the percentages hereinafter required. . . .

"Within ten days from the date of filing such petition, the clerk shall examine, and from the records of registration, ascertain whether or not said petition is signed by the requisite number of qualified electors, and he shall attach to said petition his certificate showing the result of said examination. . . .

"If by the clerk's certificate the petition is shown to be insufficient, it may be supplemented within ten days from the date of such certificate by the filing of additional papers, duplicates of the original petition except as to the names signed. The clerk shall, within ten days after such supplementing papers are filed, make like examination of the sup-

plementing petition, and if his certificate shall show that all the names to such petition, including the supplemental papers, are still insufficient, no action on the petition shall be mandatory on the legislative body; but the petition shall *remain on file* as a public record; . . .

"If the petition shall be found to be sufficient, the clerk shall submit the same to the legislative body at its next regular session." (Italics ours.)

Respondent endeavors to justify his certificate and refusal to certify the sufficiency of the referendum petition as to qualified electors signing the same upon the theory that the act above cited requires that the referendum petition be *presented to the legislative body* within 30 days, and that the *filing* of such a petition *with the city clerk* was not *presenting it to the legislative body* within the meaning of the statute and therefore the signers of the petition had the legal right to withdraw their names from it up until the time the referendum petition was filed with or presented to the *city council* and not the city clerk; that the referendum petition was never in fact presented to the city council, as such, and therefore the time for withdrawal of names had, as yet, not run, citing *Uhl* v. *Collins,* 217 Cal. 1 [17 Pac. (2d) 99, 85 A. L. R. 1370] ; *Locher* v. *Walsh,* 17 Cal. App. 727 [121 Pac. 712] ; *McAulay* v. *Board of Supervisors,* 178 Cal. 628 [174 Pac. 30].

■ No provision appears either in our Constitution or general laws for withdrawal of names from a referendum petition. Nevertheless, the great majority of cases recognize the right of withdrawal as incidental to the right of the petition itself. A conflict exists, however, in many states as to the period within which this right may be exercised. Many of the decisions hold that withdrawal is permissible up to the time that "final action is taken" or until the jurisdiction of the officer to whom the petition is addressed attaches. (See *State* v. *Seattle,* 59 Wash. 68 [109 Pac. 309] ; *Littell* v. *Board of Supervisors,* 198 Ill. 205 [65 N. E. 78] ; *Territory* v. *Mayor and City Council of Roswell,* 16 N. M. 340 [117 Pac. 846, 35 L. R. A. (N. S.) 1113].)

In this state a different rule has been laid down, restricting the right of withdrawal to the period before the filing of the

petition with the officer or body authorized to receive it. (*Uhl* v. *Collins, supra.*)

In *Beecham* v. *Burns*, 34 Cal. App. 754 [168 Pac. 1058], the court said:

"The remaining question in this case is based upon the claim that certain signers of the recall petition requested the clerk to withdraw their names therefrom after the petition was filed with the clerk and before that officer had certified the result of his examination as required by the statute. . . . The clerk is not clothed with authority to alter the petition when it has been filed; he is not authorized to receive extraneous evidence of its contents, or to base his certificate upon statements made to him by electors who have signed it. His certificate must show the result of an examination whereby 'from the records of registration' he shall ascertain whether or not 'said petition' is signed by the requisite number of qualified voters. In our opinion, the signers of such petitions may not withdraw their names or have their names withdrawn by the clerk at any time after the petition has been filed."

It was aptly stated in the Uhl case that in order to accomplish the intent, the proponents of a measure must be able to rely upon the signatures obtained, and if continually forced to seek new ones to take the place of withdrawals, they may never be able to prepare a proper petition within the limited period which usually exists. To permit withdrawals after the petition is completed and filed and the work of securing signatures abandoned, it seems to us would make the system wholly unworkable. This mere implied power of the signer, which is not expressly provided for in the Constitution or statutes, cannot be used so as to jeopardize the exercise of the constitutional right itself.

Construing the referendum provisions of Act No. 3651, above cited, with the sections relating to the procedure in reference to initiative petitions, to us it becomes immediately apparent, and the conclusion is irresistible, that respondent's claimed justification in refusing to certify the petition as sufficient, for this reason would be a strained construction of the statute. ▮▮▮ We are firmly of the opinion that the filing of the referendum petition with the city clerk, who in fact is the clerk of the legislative body, constitutes the act *of*

*presenting it to the legislative body.* If it were otherwise, any city council, maliciously conspiring to defeat the object and purpose of the referendum law, could adopt a legislative act repugnant to the interests of the public, and purposely adjourn for a longer period than 30 days. In such case there would be no legislative body in session with whom referendum petitions could be filed or to whom they might be presented. Under the circumstances, the construction given this act by respondent would become palpably fallacious and justice would become but a fleeting fancy.

Applying the rule announced in *Uhl* v. *Collins, supra,* to the facts pleaded in this case, the original and supplemental petitions contain a sufficient number of names of qualified electors and exceed in number the required 613.

 The remaining point presented and raised by the demurrer, which is necessary to determine on this appeal, may be stated as follows: Respondent contends here, as he did in the trial court, that the act or acts as set forth in the referendum petition are multifarious, that they constitute several independent acts, part of which are legislative and part of which are administrative and not legislative in character. He contends, therefore, that they are not subject to the right of referendum, citing *Bricker* v. *Banks,* 98 Cal. App. 87 [276 Pac. 399]; *Woodlawn* v. *Cain,* 135 Ala. 369 [33 So. 149]; *Dwyer* v. *City Council of the City of Berkeley,* 200 Cal. 505 [253 Pac. 932]; *Foster* v. *City Council of the City of Berkeley,* 201 Cal. 769 [255 Pac. 1118]; *Riedman* v. *Brison,* 217 Cal. 383 [18 Pac. (2d) 947]; *McKevitt* v. *City of Sacramento, etc.,* 55 Cal. App. 117 [203 Pac. 132]; *Burdick* v. *City of San Diego,* 29 Cal. App. (2d) 565 [84 Pac. (2d) 1064]; *Hyde* v. *Wilde,* 51 Cal. App. 82 [196 Pac. 118]; *Chase* v. *Kalber,* 28 Cal. App. 561 [153 Pac. 397].

Respondent argues that under the law but one single legislative enactment may be embraced in any given petition for a referendum, and that a petition for referendum which includes more than one legislative measure within its scope is defective and not entitled to be filed, certified or otherwise acted upon, and claims that it definitely appears that the referendum petition herein seeks to subject at least six purported legislative acts of the city council of the city of Fullerton to a single vote of the electorate, thereby depriv-

ing the voter, as well as the person approached to sign the petition, of the right to freely exercise the suffrage guaranteed him by the state Constitution and the referendum law, citing *Bennett* v. *Drullard*, 27 Cal. App. 180 [149 Pac. 368]. In that case the appellant petitioned for a writ of mandate to compel the city council and city clerk of the city of Santa Cruz to submit a certain initiative ordinance to the electors of that city. Accompanying such proposed ordinance and contained in the same initiative petition, were two alternative propositions, purporting to make certain changes in the main proposed ordinances, which alternative propositions petitioner also sought to have submitted and voted upon at said election. The petition for a writ was denied in the superior court and in affirming that decision the District Court of Appeal adopted the opinion of the trial court and quoted therefrom as follows:

"On the first point, that is, the claim that an initiative petition may contain more than one ordinance, no provision of the city charter to that effect has been shown to the court, and after a somewhat exhaustive search, the court has been unable to find any. On the contrary, in every section throughout the article of the charter dealing with the initiative the singular, 'ordinance', is used, and there is nothing contained in said sections which gives the slightest encouragement to the claim of the petitioner."

In *Hopping* v. *Council of the City of Richmond*, 170 Cal. 605 [150 Pac. 977], three legislative acts were sought to be submitted to referendum and a separate petition for referendum was employed and a mandate proceeding instituted as to each. In that case the court said:

"These two resolutions are dependent upon that involved in case number 7270. They need not be separately considered. . . .

"The resolutions of the Richmond city council come within the principles established by these authorities. They involved and required determination by the council that the public interest of the city required that it should have a city hall, that the same should be located on the land offered for that purpose, that said offer should be accepted, that a suitable building should be erected thereon, that the money of the city should be appropriated and used in the construction thereof,

and that, when completed, the building should be occupied and used by the city officers as a city hall and for municipal purposes, and the declaration by the council that all of these things should be done accordingly. *This constituted a declaration of a public purpose* and a provision for ways and means of accomplishment. As said in the quotation from *People* v. *Parks,* 58 Cal. 624, 643, it was to that *extent a thing* which the legislative power alone may declare and determine. The council could consider the questions of public good, public interests, and public policy involved solely by virtue of and in the exercise of its legislative powers, and its *action* thereon *was clearly an act in the exercise of that power.*'' (Italics ours.)

It is to be noted that the court therein considered the resolutions as dependent upon one another and as one act and referred to the act repeatedly in the singular, saying ''This constituted . . . a public purpose'', that ''it was to that extent a thing'', and that ''its action thereon was clearly an act in the exercise of that power''.

It seems clear that the court considered it one act and done for one purpose, even though included therein was the purchasing and acquiring of real property upon which the city hall was to be located. Logically, then, in the instant case, the only way in which the people could intelligently vote upon the act of the council would be to vote upon the entire act. To do otherwise would lead to confusion. To refuse the right to vote, simply because of carelessness or intentional confusion by the legislative body itself, would be to allow the council to do indirectly that which it could not do directly, i. e., defeat the right of referendum, and this certainly would not amount to a liberal construction of the initiative and referendum law, for which the law itself provides (Deering's Gen. Laws, Act 3651.) Section 1, paragraphed ''Liberal Construction'', provides as follows:

''All the provisions of this statute are to be liberally construed for the purpose of ascertaining and enforcing the will of the electors.''

▮ Appellant in his brief recites ''that during the argument, when the court stated that it did not believe the petition was sufficient because it did not appear on its face that the act or acts were in any way connected together or con-

stituted one act, the attorneys for the petitioner stated that they would like to amend the petition to allege, in substance, that all of the acts or parts of an act set forth in the petition were connected together and were parts of one and the same act, to wit, selecting a city hall site and locating a city hall and city offices thereon. Such amendment, however, was refused, and the court said in substance, that the only way to cure this defect was to have a separate referendum petition for each act of the council. The statutory thirty-day period having elapsed, the petitioner could not circulate additional referendum petitions and so stated to the court, whereupon the court issued the order sustaining the demurrer without leave to amend.''

An amendment to the complaint should have been allowed. It is appellant's contention that the matter or matters as set forth in the petition were simply the form and manner that the council chose to exercise the legislative act of selecting a city hall site and locating city offices thereon, and that the form and manner which the council chose, whatever might have been its reason or purpose for doing so, could not defeat the right of referendum; that all of these preliminary steps, to wit, setting aside the money, acquiring the property, designating the city hall site, and finally authorizing plans and specifications for the early construction of a city hall on the property, were procedural steps, and when considered together, were legislative in character and connected together in their commissions, citing *Burdick* v. *City of San Diego, supra;* and *Harbor Center Land Co.* v. *Richmond,* 38 Cal. App. 315 [176 Pac. 50].

The different parts of the act, standing alone and by themselves, are indefinite and uncertain and incapable of being understood. They are interdependent, one upon the other, because it takes all of them to make a complete act, and each act could not be intelligently voted upon separately by the people. To do so would lead to much confusion. If the act could be divided into separate parts as the council did in passing it, the parts would have to be grouped together in order to determine what the act of the council really was. ██ It is well settled in California that the selection and designation of a city hall site and the steps incident to the determination that a city hall should be erected

on the proposed site, are legislative acts subject to referendum. (*Jardine* v. *City of Pasadena,* 199 Cal. 64 [248 Pac. 225, 48 A. L. R. 509] ; *Burdick* v. *City of San Diego, supra.*)

■ In approaching the question presented, we must examine the pleadings and facts in the light of the provision of the initiative and referendum act that "All provisions of this statute are to be liberally construed for the purpose of ascertaining and enforcing the will of the electors." The right of initiative and referendum is a right reserved to the people under the Constitution, and not a grant of power. Therefore it should be liberally construed in order to uphold this basic right. (Art. IV, sec. 1, Constitution of California.) This same power is reserved to the electors of each county, city and county, and city and town of the state, to be exercised under such procedure as may be provided by law. (*Hopping* v. *Council of the City of Richmond, supra; Ley* v. *Dominquez,* 212 Cal. 587 [299 Pac. 713].) The law will not allow a person to do indirectly that which he cannot do directly, that is, defeat the right of referendum of a legislative act by purposely causing a legislative act to be divided into several separate acts.

■ Under the first part of the minutes of the council meeting of July 22, 1938, the mayor stated that the council had decided to purchase the property in question for a *city hall site.* Immediately following that, and at the same meeting, a resolution was adopted setting aside the purchase price and directing the purchase of certain property, without designating the purpose of the purchase, i. e., that it was for a city hall site. If the council decided to perform a legislative act upon the statement of the mayor in an open meeting and if the minute entry designating the intention of the city council to purchase a city hall site is essentially necessary to construe the intent of the council in a subsequent resolution appropriating funds and directing the purchase of property, respondent cannot complain of multifariousness. ■ The resolution of August 2, 1938, when considered with the other resolutions, merely designates the site for a city hall. A subsequent minute resolution authorized a certain architect to proceed with plans and construction. The referendum petition is prepared in the most logical manner obtainable in order to express the will of the petitioners. There is no

conflict between the various portions of the petition. Considered together, they constitute a legislative act occurring within thirty days prior to the filing of the petition. The reasons for the application of a strict rule which might apply to a proposed ordinance instituted by an initiative measure such as stated in *Bennett* v. *Drullard, supra,* should not be held to apply to the referendum. The appellant was obliged to adopt the form chosen by the city, council in determining that the public interest of the city required that it should have a city hall; that the same should be located on the land offered for that purpose; that the offer should be accepted; that a suitable building should be erected thereon; that money belonging to the city should be appropriated and used in the construction thereof; and that when completed, the building should be occupied and used by the city officers as a city hall. All of these separate acts constituted a declaration of a public purpose and a provision for ways and means of its accomplishment. (*Hopping* v. *Council of the City of Richmond, supra.*) If the council elected to adopt a separate resolution or ordinance for each of these acts stated, could it be rightfully said that it would be necessary to secure a separate petition and separate signatures for the purpose of submitting each of the resolutions to the people? This would be but a mechanical view of the law and would render inefficacious for any purpose the constitutional guaranty of the right of referendum.

In the light of the reasoning herein expressed, we are of the opinion that the judgment of dismissal should be reversed. The court is directed to overrule the demurrer. The judgment is reversed.

Barnard, P. J., concurred.