JOHN O. WILSON ET AL., PROSECUTORS, v. BOROUGH OF
COLLINGSWOOD.

Argued June 8, 1910—Decided November 5, 1910.

1. Where by law the governing body of a municipality is empowered
to take certain action relating to a proposed public improvement
unless on or before a prescribed date a remonstrance by owners
of a specified amount of real estate affected by the improvement
is filed, owners who have signed such remonstrance may by proper
action withdraw their signatures, at any time up to date so pre-
scribed, and the jurisdiction of the council will not be ousted if the
withdrawals are sufficient to reduce the proportion of remon-
strants below the amount necessary to make the remonstrance
effective.

2. The plan for a water works and water-supply plant as advertised
in this case under section 90 of the Borough act held not suffi-
ciently definite to comply with the intent of the statute.

On *certiorari.*

Before Justices PARKER and BERGEN.

For the prosecutors, *Wilson & Carr* (*Collins & Corbin* on
the brief).

For the defendant, *Francis D. Weaver.*

The opinion of the court was delivered by

PARKER, J. The particular proceeding attacked by prose-
cutors under this writ is a resolution by the council of the
borough of Collingswood, providing for the submission to
the voters of said borough of the question of the construc-
tion of a water works and a water-supply system, and of the
issue of bonds for the cost of constructing the same, which
resolution was passed April 15th, 1910. There are three
principal grounds of attack, to which others may be consid-
ered subsidiary. They are—*first,* that the jurisdiction of
the council was ousted by remonstrances filed as provided in

section 90 of the Borough act of 1897 as amended in 1906 (at *p.* 133) ; *second,* that, in the language of the reasons, "the plan proposed to be submitted to the voters is not sufficiently definite and specific to permit the voters to form any intelligent judgment upon the merits of the scheme," and *third,* that the approval of the state board of health and state water-supply commission have not been secured.

As to remonstrance : Section 90, as amended, provides in substance that the council may not purchase water works or any water-supply plant until after application of one-fourth in value of the property owners of the borough, the council shall cause thirty days' notice of intention to submit the question to the voters at a general or special election, to be given by posting and advertisement; and if within sixty days after the first publication of such notice a remonstrance of at least one-half in value of the property owners be filed with the borough clerk, no election or further proceedings shall be had. It is conceded that remonstrances amounting in all to more than the requisite one-half were filed with the clerk; it is also conceded that from time to time certain of these were withdrawn, and that if the withdrawals are effective, neither at the end of the sixty days nor at any time prior thereto were there sufficient remonstrances in force to defeat the scheme. The question presented for decision is as to the validity of the withdrawals. It is claimed by prosecutor that the withdrawals were ineffective because the remonstrances were self-executing and ousted the jurisdiction of council which withdrawals could not restore; but this is a *petitio principii.* It is also urged that the withdrawals were without effect because lodged with the clerk, and that though addressed to the council they did not reach that body till after the sixty days had expired; because they could not operate until the remonstrance was before the council, at which time its jurisdiction was gone; and that jurisdiction once ousted by remonstrance cannot be restored by withdrawal therefrom. We see no force in any of these arguments. The situation existing at the end of the sixty days was controlling, and the inquiry should be, whether at that time there were on

file and in force sufficient remonstrances to oust jurisdiction; if not, the council might proceed. Up to that crucial point remonstrances might be made or withdrawn; and we think the proper custodian of them between meetings of the council was the borough clerk, with whom, by the express language of the statute, the remonstrances must be filed. The withdrawals are adequate in form to express the intent of their signers that their signatures to the remonstrance be canceled.

Counsel point us to the case of *Knopfi* v. *Roofing Co.,* 92 *Mo. App.* 288, as holding on the authority of New Jersey decisions that a remonstrance once filed under such circumstances as those in the present case cannot be withdrawn. That decision seems so to hold; but we do not agree with its reasoning and it finds no support in our cases which it cites, which are *Jersey City Brewery Co.* v. *Jersey City,* 13 *Vroom* 575; *Vanderbeck* v. *Jersey City,* 15 *Id.* 626, and *Roebling* v. *Trenton,* 29 *Id.* 40. In every one of these cases the withdrawals were after the expiration of the time allowed for remonstrance, and in each one that fact was adverted to in the opinion as material to the decision.

As was said in *Bachman* v. *Phillipsburg,* 39 *Vroom* 552, 555, a case where one signer for a liquor license withdrew his name before the application was presented to the common council, but afterwards wished to withdraw that withdrawal: "We hold that the application must speak as of the time when it is officially presented to the council and official cognizance is taken of it. Prior to that time names may be added or withdrawn. After that time the application is not subject to such change." We conclude, then, that it was competent for remonstrators to withdraw their remonstrances at any time within the sixty days by filing with the borough clerk written withdrawals properly expressing their desire, and if these withdrawals reduced the total remonstrance below one-half the property value, the remonstrance would be ineffective. On the first branch of the case, therefore, prosecutor cannot succeed. But on the second branch we reach a different result, for we think the proposed contract was not

advertised in a sufficiently definite manner. The advertised plan is not as general and vague as in *Gillen* v. *Spring Lake,* 32 *Id.* 392, where the same section 90 was under consideration with respect to a sewer system; but, in the language of Justice Van Syckel's opinion, it fails to advise the voters of such facts as to "enable them to form an intelligent judgment on the merits of the scheme." The details were given in the advertisement as follows:

"WELLS AND SOURCE OF SUPPLY; FILTER PLANT; PUMPING STATION; STAND PIPE AND DISTRIBUTION SYSTEM.

"*Wells and Source of Supply.*—Supply to be procured by means of artesian wells placed on land situate at or near Cooper's creek at a point near the northerly end of First avenue, in said borough of Collingswood.

"*Filter Plant.*—A suitable filter to be installed for removal of matters in suspension, such as iron or other impurities, and capable of handling five hundred thousand gallons in twenty-four hours, and to be so laid out that it may be increased to one and a half million gallons in twenty-four hours.

"*Pumping Station.*—To be composed of two units throughout, each unit capable of handling one and one-half million gallons of water in twenty-four hours. Each unit to be composed of one pump, compressor, and necessary boilers to operate same, together with buildings and chimney.

"*Stand Pipe.*—A suitable stand pipe is to be located on a ridge of land north of the turnpike in the vicinity of Highland avenue, suitable for the requirements of the borough of Collingswood.

"*Distribution System.*—The distribution system will be gravitating from said stand pipe, and to be of such a size as will supply the best fire protection and answer all domestic purposes."

Then follows an estimate of cost. From the above it appears that there are to be artesian wells on designated land—how many is not stated, nor their proposed capacity. The filter is to be "suitable"—but it is not stated where it

is to be located, or what kind of filter is to be constructed. The character of the pumps is not given, but only their capacity; and the location of pumping plant is not stated. The stand pipe is to be "suitable"—no height is stated, no capacity, no head of water or pressure. The distribution system to be "of such a size as will supply the best fire protection and answer all domestic purposes." This is discreetly vague.

This is not the "definite plan" that "must be submitted," in the language of Justice Swayze in *Frelinghuysen* v. *Morristown*, 47 *Vroom* 280. While less general than that in Gillen v. Spring Lake, it still fails to measure up to the standard of definiteness required to enable the voters to form an intelligent judgment on the scheme.

For this reason and on the authority of *Gillen* v. *Spring Lake, supra,* the resolution must be set aside. This conclusion makes it unnecessary to pass on the questions of submitting the plan to the state board of health and state water-supply commission before they are voted upon.

The prosecutors are entitled to costs.