[S. F. No. 15050. In Bank.—November 1, 1934.]

WILLIAM LANDSBOROUGH, Petitioner, v. EARL LEE KELLY, as Director of Public Works, etc., et al., Respondents.

740

Warren Olney, Jr., J. M. Mannon, Jr., Edwin S. Pillsbury and McCutchen, Olney, Mannon & Greene for Petitioner.

U. S. Webb, Attorney-General, E. B. Power, Assistant Attorney-General, C. C. Carleton, Frank B. Durkee, Jack Howard and C. R. Montgomery for Respondents.

Morrison, Hohfeld, Foerster, Shuman & Clark, as *Amici Curiae* on Behalf of Respondents.

THE COURT.—This is a petition for a writ of mandate. Petitioner brought this proceeding as a citizen, resident, elector and taxpayer of the state of California and the county of Kern, to compel respondents to take certain action with respect to a highway construction project. Respondents

are Earl Lee Kelly, Director of Public Works; C. H. Purcell, Chief of the Division of Highways and State Highway Engineer, and G. T. McCoy, Assistant State Highway Engineer.

In April, 1932, R. E. Pierce, one of the district engineers of the division of highways, recommended the construction of a portion of the main highway from Sacramento to San Francisco, located between Fairfield and Vacaville, approximately 3.3 miles long, commonly known as the Vacaville project. On August 5, 1933, the California highway commission adopted a revised budget, allocating therein the maximum sum of $172,000 for this work. Thereafter respondents approved plans and specifications and cost estimates, which provided that the paving of the proposed highway should consist of asphalt concrete pavement, constructed in accordance with the "Standard Specifications" of the department of public works, division of highways, an official publication. On November 10, 1933, respondents took preliminary steps toward letting a contract for the proposed road by issuing a notice of the work and call for sealed bids. Bids were to have been opened on November 29, 1933, but shortly prior to that date, petitioner brought this proceeding, and this court issued an alternative writ of mandate commanding respondents to withdraw the plans and specifications from competitive bidding, reject any and all bids submitted on said plans and specifications, and to amend the same to provide for the alternate use of Portland cement concrete pavement and asphalt concrete pavement, or to prepare new plans and specifications making such provision. Bids were thereupon returned unopened, and no further action in connection with the award of the contract was taken. Respondents filed a demurrer and an answer to the alternative writ. On the return day, this court made an order referring issues of fact to Honorable A. E. Shaw as referee. Hearings were held by him, and findings of fact were made and filed.

The issue involved is the validity, construction and effect of section 365e½ of the Political Code, enacted in 1933. It appears that prior thereto it was the policy of the department of public works, in constructing highways of superior quality, to use either asphalt concrete or Portland cement concrete, and by specifying only one in connection

with a particular job, to maintain some sort of equality between the two types of material, where engineering conditions permitted, in order not to discriminate against the financial interests concerned in each industry. Section 365e½, obviously designed to effect a change in this policy, reads as follows:

"Whenever any high-type paving work is to be done by contract under the control and direction of the Department of Public Works which is to be paid for in whole or in part with moneys coming out of the State highway maintenance fund or the State highway construction fund, *and in the judgment of said department the conditions do not require the use of a particular type of pavement,* the said department shall cause to be prepared *alternate plans and specifications* contemplating the use of all such materials as are adopted as standard for high-type paving by the Division of Highways and acceptable to it. The Department of Public Works shall then advertise and call for bids for the doing of such work based on the use of such alternate materials and upon receipt of such bids shall proceed to the award of a contract to the lowest qualified bidder. Whenever the words *'high type paving'* are used in this act, they shall be construed to include only *asphalt concrete pavement and Portland cement concrete pavement* as designed by the Division of Highways."

It is clearly the purpose of this statute to make the choice of one or the other type of pavement (apart from engineering considerations), a matter to be determined by competitive bidding. The "conditions" mentioned are undoubtedly the physical conditions and not the economic factors. Where a particular road, as a matter of engineering, requires for its proper construction and maintenance asphalt concrete pavement alone, or Portland cement concrete pavement alone, this may be specified; but where a satisfactory road may be built of either type, and neither involves excessive maintenance costs, alternate specifications must be made. It is plainly improper to specify one type on the ground of its lower initial cost, since the legislature has expressly provided for alternate bids, thus evidencing an intention to have the cost determined by competitive bidding, and not by estimates of the department. It is entirely possible that a contractor, by reason of his equipment, ex-

perience or other factors, may use the more expensive of the two materials, and yet submit a lower bid for the entire job than a contractor using the cheaper material.

The findings of the referee are mainly in favor of petitioner. He found in substance that respondents Kelly, Purcell and McCoy did not personally determine that the conditions of the Vacaville project required the use of a particular type of pavement, but that they left these matters in this and in all other cases for the determination of the engineers of the division of highways; that respondents had laid down no policy with reference to conditions requiring the use of asphalt concrete pavement or Portland cement concrete pavement; that since section 365e½ took effect, contracts for about fifty projects had·been let and that in no case were alternate plans and specifications drawn or alternate bids called for; that in approximately ninety per cent of the highway projects where high-type paving is desired, it is feasible to use either type of pavement if initial cost is disregarded; that up to June 30, 1932, 1359 miles of primary state highways and 340 miles of secondary state highways in this state were constructed with Portland cement concrete pavement, and only 623 miles of primary and 169 miles of secondary highways with asphalt concrete pavement; that the conditions of the Vacaville project do not require a particular type of pavement, and that Portland cement concrete pavement would be as suitable as asphalt concrete pavement provided that the element of initial cost is left out of consideration; that while it is probable that the use of the Portland cement type would cost more than the other, it is impossible to state what the difference in cost, if any, would be, and that only competitive bidding upon the basis of alternate plans and specifications would accurately determine the difference.

The referee found also that R. E. Pierce, engineer in charge of the district in which the proposed road is located, originally recommended Portland cement concrete for the job; that later he, together with B. W. Booker, office engineer of the district, recommended asphalt concrete pavement instead, the change in recommendation being based upon an increased cost of the Portland cement type, and also an adverse soil condition, which could, however, be overcome by laying a thicker subgrade of selected material; that

Fred J. Grumm, engineer of surveys and plans of the division of highways, approved the changed recommendation for the above reasons and for the additional reason that the project involved side hill cuts and fills, but he admitted that, disregarding cost, a satisfactory highway could be made with Portland cement concrete paving.

These findings are all supported by the evidence. Petitioner contends that they establish either failure to exercise discretion, or a clear abuse thereof, justifying the issuance of the writ. Respondents take the position that the determination made was within their discretion, and was based upon conditions of the proposed work. ▮ They also attack the constitutionality of the statute.

The constitutional points require no discussion. The statute is said to be uncertain, and to have a misleading title. These issues are not greatly stressed, and in our opinion are wholly without merit.

▮ The propriety of the remedy of *mandamus*, in the event that an abuse of discretion is proved, is clear. While *mandamus* will not lie to compel the exercise of discretion in a particular manner, it will lie to correct an abuse of discretion, and where the petitioner is clearly entitled to a certain action, may be used to compel such action. (*Wood* v. *Strother*, 76 Cal. 545 [18 Pac. 766, 9 Am. St. Rep. 249]; *Tulare Water Co.* v. *State Water Com.*, 187 Cal. 533 [202 Pac. 874]; *Inglin* v. *Hoppin*, 156 Cal. 483 [105 Pac. 582].) The case of *Stanley-Taylor Co.* v. *Board of Supervisors*, 135 Cal. 486 [67 Pac. 783], is distinguishable, for there the board had a right to reject bids according to its own belief as to the public interest, whereas here the discretion is to be exercised upon consideration of the conditions of the road.

In the light of the findings and the evidence, it is possible to reach but one conclusion: That the respondents were guilty of an abuse of discretion in failing to call for alternate bids. R. E. Pierce, district engineer, B. W. Booker, office engineer, and Fred J. Grumm, of the headquarters office, each testified under cross-examination that by taking proper precautions a satisfactory road could be built with Portland cement concrete. Grumm, for example, was asked: "Q. And by spending such money as is necessary to build a suitable subgrade on which to lay a PCC pavement on this Vacaville project, you could have built there a road with

a PCC pavement which would have had as good an expectancy of life as that ordinarily used by the highway department when it puts in PCC pavement in ordinary practice? A. I believe I could do that and have an assurance that that Portland cement concrete pavement would endure similarly to that placed under more favorable conditions." J. J. Jessup, a civil engineer, formerly city engineer and superintendent of streets of Berkeley and city engineer of Los Angeles, testified that he had made a careful study of the plans and specifications and of conditions on the ground; and that not only would Portland cement concrete be proper, but "any other conclusion in my estimation, practically eliminates the use of Portland cement concrete pavement for high type pavement". As above stated, the referee found that this type was suitable. In spite of this testimony and these admissions, respondents assert that it was entirely proper to call for but one type of pavement. They argue that they came to the honest conclusion, as a result of engineering reports, that the physical conditions—adverse soil, hill cuts and fills, were unsuitable for Portland cement pavement. If that type were used, they say, it would be necessary for the contractor to go to such excessive expense in preparing the subgrade and in overcoming other adverse conditions, that he could not possibly do it at a figure which would compete with the contractor using the asphalt type. They conclude that the preparation of alternate plans and specifications would be an idle act, resulting in needless extra expense.

This reasoning nullifies the effect of the statute. It was undoubtedly the intention of the legislature to eliminate favoritism, prejudice and artificially maintained equality between producers, and to make the choice of pavement a result of free, competitive bidding between the two recognized superior materials. The primary object is of course economy in road construction, but the legislature has determined that such economy is to be achieved by means of competition between the producers of two standard materials. If the department substitutes its own judgment on costs, the benefits of such competition are lost. The judgment of the department may be an entirely honest one, and in the present proceeding no bad faith is charged. But under the statute, an honest opinion that one type of pave-

ment will cost more than another cannot be the basis of the department's action. Physical conditions alone are committed to the discretion of the respondents.

We may concede that in an exceptional case, where the cost of overcoming adverse conditions would be so unusually high that it would be foolish to expect any competition, the department might be justified in dispensing with alternate bids. Petitioners make the same concession. In such a case the physical conditions may be said to require one type, since those conditions could not be changed save at unreasonable expense. ■ But in the instant case, we have an original recommendation by a qualified officer, for Portland cement type pavement, and a finding by the referee that the added cost, if any, of preparing the road for such pavement, is uncertain, and cannot be determined save by competitive bidding. Respondents had no definite information on this matter, and Grumm's rough estimate on the stand amounted to between $6,500 and $7,000 per mile of road. Since the total job embraced something over three miles and was estimated originally to cost $172,000, if done with Portland cement concrete, there is certainly no such unreasonable difference, even accepting Grumm's guess, as to justify the failure to call for alternate bids. There is evidence in the record that bids might possibly be as much as twenty-five per cent below the estimated cost. And the figure given was plainly conjectural, since Grumm admitted that he had not prepared plans and specifications, and could not definitely state what precautions and corrective steps would be needed to prepare the soil for Portland cement concrete.

It follows that petitioner is entitled to the relief demanded, namely, the preparation and issuance of new or amended plans, specifications, notices and advertisements providing for the alternate use of Portland cement concrete pavement and asphalt concrete pavement.

Let a peremptory writ of mandate issue accordingly.