[Civ. No. 23983. Second Dist., Div. Two. May 20, 1960.]

LUCEIL STRAUSS et al., Appellants, v. BOARD OF SUPER-VISORS OF THE COUNTY OF LOS ANGELES, Respondent.

Wellborn, Barrett & Rodi, Owen F. Goodman and James D. Doggett for Appellants.

Harold W. Kennedy, County Counsel and David D. Mix, Deputy County Counsel, for Respondent.

KINCAID, J. pro tem.*—This is an appeal from a judgment of the Superior Court of the County of Los Angeles denying a peremptory writ of mandate sought by appellants herein.

The judgment in effect sustained the determination of the respondent board of supervisors that written protests to the proposed incorporation of the city of Hidden Hills had been filed, signed by owners representing 51 per cent or more of the total assessed valuation of the land within the proposed boundaries; that the board was, therefore, without jurisdiction, and that the proceeding for the incorporation be abandoned.

The facts were stipulated and are not in dispute.

Briefly, proceedings were initiated to incorporate a portion of the unincorporated territory of the county of Los Angeles as the city of Hidden Hills in accordance with the procedure specified by Government Code, sections 34300-34332.

All required procedures were duly taken and followed up

---

*Assigned by Chairman of Judicial Council.

to and including the holding of the hearing required by Government Code, section 34311.[1]

Prior to the time set for the final hearing, written protests to the proposed incorporation were filed with the respondent board signed by the owners of land within the boundaries of the proposed incorporation representing more than 51 per cent of the total assessed valuation of the land within said boundaries.

However, several written requests for withdrawal of their prior protests were also filed with the board by various owners prior to the time set for the final hearing.

Upon the final hearing, respondent disallowed all requests for withdrawal which had been filed subsequent to the filing of the protests to which they related. The only ground upon which said requests for withdrawal were disallowed was that said requests for withdrawal had been filed subsequent to the filing of the protests to which they related.

Respondent then found and determined that written protests to the proposed incorporation (including and counting the protests as to which said subsequent requests for withdrawal had been denied) had been filed with it signed by owners of land within the boundaries of the proposed incorporation representing more than 51 per cent of the total assessed valuation of the land within said boundaries; and respondent thereupon declared itself without jurisdiction in the matter of the proposed incorporation and ordered the proceedings abandoned.

If the aforementioned requests for withdrawal had not been denied and if the protests to which they related had not been included and counted, the written protests to the proposed incorporation would have represented less than 51 per cent of the total assessed valuation of the land within the boundaries of the proposed incorporation; and the respondent would have accordingly still had jurisdiction and duty to proceed in the matter. In such event, it is clear that writ of mandate should have issued. (*Landsborough* v. *Kelly,* 1 Cal.2d 739 [37 P.2d 93, 96 A.L.R. 707].)

The controlling question presented is whether a protest to

---

[1]Said section 34311 provides in part as follows: "The board shall hold a hearing . . . If upon the final hearing the board of supervisors finds and determines that written protests to the proposed incorporation have been filed with the board, signed by the owners of land within the boundaries of the proposed incorporation representing 51 per cent of the **total** assessed valuation of the land within said boundaries, the jurisdiction of the board of supervisors shall cease; no election shall be called . . ."

136

a proposed incorporation, after filing thereof, may be withdrawn.

 While the specific question presented has not been decided by any appellate court in California, it is the settled rule in this state, as contrasted with varying rules in other jurisdictions, that the signers of initiative, referendum, annexation and similar petitions, may not, after the filing of such a petition, withdraw their names therefrom. (*Uhl* v. *Collins,* 217 Cal. 1 [17 P.2d 99, 85 A.L.R. 1370], initiative petition; *Rogers* v. *Board of Directors of Pasadena,* 218 Cal. 221 [22 P.2d 509], annexation petition; *Beecham* v. *Burns,* 34 Cal.App. 754 [168 P. 1058], recall petition; *Knowlton* v. *Hezmalhalch,* 32 Cal.App.2d 419 [89 P.2d 1109], referendum petition; *Sweetwater Fruit Co.* v. *City Council,* 126 Cal.App.2d 655 [272 P.2d 828], annexation petition.)

The contrast between the California rule and the varying rules in foreign jurisdictions as to the right to withdraw from an original petition is significant herein as will be later shown, and is succinctly stated in *Uhl* v. *Collins, supra,* page 3: "No provision appears either in our Constitution or general laws for withdrawal of names from an initiative petition. Nevertheless, the great majority of the cases recognize the right of withdrawal as incidental to the right of petition itself. A conflict exists, however, as to the period within which this right may be exercised. Many of the decisions hold that withdrawal is permissible up to the time that 'final action' is taken, or until 'the jurisdiction of the officer to whom the petition is addressed attaches.' [Citations.] We deem it unnecessary to embark upon a discussion of these authorities, *for in this state a different rule has been laid down, restricting the right of withdrawal to the period before the filing of the petition with the officer or body authorized to receive it.*" (Emphasis added.)

It appears from *Uhl* v. *Collins, supra,* as well as from *Beecham* v. *Burns, supra,* 34 Cal.App. 754, and *Knowlton* v. *Hezmalhalch, supra,* 32 Cal.App.2d 419, that one of the reasons, if indeed not the primary reason, for not permitting withdrawals of or from initiating petitions after filing thereof was that the statutes and constitutional provisions authorizing the filing of such petitions contained no provisions permitting withdrawals. Additionally, *Uhl* v. *Collins, supra,* is based on the further proposition that to permit withdrawals after the petition is completed and filed and the work of securing signatures abandoned, would make the initiative system unworkable.

It is true that, in *Rogers* v. *Board of Directors of Pasadena,* *supra,* 218 Cal. 221, 223, the Supreme Court stated in a passing comment (not strictly necessary to the decision since no question was presented in regard thereto and since it was apparently conceded that the petition for annexation was not rendered insufficient by withdrawals therefrom) stated, ". . . signers of a petition of this general character may not, after filing, withdraw their names and thereby defeat the jurisdiction of the body with which the petition was filed."

The court's comment as to the jurisdictional effect of the withdrawals cannot be construed under the circumstances as indicating any intention to adopt the rule prevailing in many foreign jurisdictions that withdrawals from petitions are permissible until jurisdiction attaches.

This is especially true, since the only decision which was cited in support of said statement was *Uhl* v. *Collins, supra,* wherein the holding that withdrawals from petitions could not be permitted after filing thereof was predicated on the bases that no statutory or constitutional provisions authorized such withdrawals and that the initiative procedure would be unworkable if withdrawals from the petition were permitted after completion and filing of the petition.

Appellants contend, however, that the California rule so restricting the right of withdrawal of or from petitions to the period prior to the filing thereof should not apply to withdrawals of protests; and that withdrawals of protests should be permitted up to the time when final action is taken, or at least up to the expiration of the period within which protests may be filed.

It is urged that there are essential differences between petitions and protests; and that, as a consequence thereof, different rules should apply with respect to withdrawals of or from petitions and to withdrawals of protests.

It is first asserted that a petition involves a single filing, or at most a limited number of filings, whereas protests are filed piecemeal. Granting that there is such a difference, it is difficult to see how it is essential or consequential, and appellants have not advanced any reasons so showing.

Like the pertinent statutes relating to petitions seeking incorporation (Gov. Code, §§ 34303-34308), the pertinent statutes relating to protests to the proposed incorporation (Gov. Code, §§ 34310-34311) do not contain any provisions authorizing withdrawals. Also to permit protests to be withdrawn after they are secured and filed and the owners opposed to the

proposed incorporation abandon the work of securing further protests in the belief that they have secured a majority protest, would render the statutory protest procedure equally as unworkable as withdrawals of names from the petition itself. Logically withdrawals should not be permitted in either case; and, as stated, the pertinent statutes do not provide for withdrawals in either instance.

It is secondly asserted that there is an essential difference between petitions and protests because the filing of a petition has a jurisdictional effect, whereas the filing of a protest allegedly has no legal effect whatever in and of itself. More particularly, it is contended on the one hand that the filing of a legally sufficient petition, such as the filing of a petition for incorporation pursuant to and in conformity with the provisions of sections 34303-34308 of the Government Code, invests the officer, body or board with whom it is filed with jurisdiction, and that, therefore, withdrawals of or from the petition would operate to defeat the jurisdiction of such officer, body or board and for that reason are not permitted to be made.

On the other hand, it is contended that, in the instance of protests filed pursuant to sections 34310 and 34311 of said code, the filings of the protests have in and of themselves no legal effect, that it is only the action of the board in finding and determining upon the hearing pursuant to section 34311 that sufficient protests have been filed which has any jurisdictional effect or consequence, and that, therefore, withdrawals of protests shall be permitted to be made up to the time of such action by the board or at least up to the expiration of the period within which protests may be filed.

It is, however, clear in the first place that the filing of a petition for incorporation pursuant to and in conformity with sections 34303-34308 of the Government Code admittedly invests the board of supervisors with jurisdiction of the incorporation proceeding; and appellants have overlooked the fact that, even under the doctrine of the foreign cases relied upon by them with one possible exception, the established rule is that protests are only permitted to be withdrawn where no jurisdiction attaches until it is first determined that sufficient protests have not been filed.

All the principal cases relied on by appellants (*In re Mosher*, 25 Ariz. 297 [216 P. 242] ; *Hawley* v. *City of Butte*, 53 Mont. 411 [164 P. 305] ; *City of Sedalia* v. *Montgomery*, 227 Mo. 1 [127 S.W. 50]) with the possible exception of one North Dakota case hereinafter discussed, hold that protests can be with-

drawn where the body or board is granted jurisdiction only after the protest period has expired, and that protests cannot be withdrawn where the body or board was originally granted jurisdiction of which it could only be deprived by a sufficient protest.

In *Mosher* and the other cited cases, the body or board by the very terms of the statutes therein was granted jurisdiction only after the protest period had expired and no sufficient protests had been filed. Objectors to a proposed municipal improvement in *Mosher* sought to withdraw their protests. The court there stated that their right to withdraw their protests ". . . hinges upon the question as to whether the legislative body . . . is granted . . . jurisdiction [under the statute] to order the improvement made unless deprived of that jurisdiction by a sufficient protest . . . , or whether it shall acquire jurisdiction only after the protest period and when it is ascertained by the body that no sufficient protest has been filed." It was held that, since the legislative body under the statute pertinent therein was not granted jurisdiction to order the improvements unless deprived thereof by a sufficient protest but was rather granted jurisdiction only after the protest period, the protests therein could be withdrawn.

*Hawley* v. *City of Butte, supra,* and *City of Sedalia* v. *Montgomery, supra,* are to similar effect. In *Hawley,* it is stated, "Our statute is somewhat peculiar, in that jurisdiction to proceed with the improvement is not conferred upon the city until it has first determined that a sufficient protest is not before it." Additionally, *Hawley* states, "Neither do these views conflict . . . with the authorities which hold that, if the statute iself confers jurisdiction upon the council which is subject to be defeated by filing a [sufficient] protest, . . . then the withdrawal of names from such a protest sufficient in the first instance to oust jurisdiction cannot have the effect of reinvesting in the council the jurisdiction lost when the protest was filed."

Herein, there can be no doubt that, under Government Code, sections 34303-34311, the board of supervisors was granted and had jurisdiction of the incorporation proceeding "unless deprived of that jurisdiction by a sufficient protest," as noted in *Mosher*; or, to phrase it another way, the board was granted and had jurisdiction which was subject only "to be defeated by filing a [sufficient] protest," as noted in *Hawley*. Therefore, the principal cases relied on by appellants, with the possible exception of one North Dakota decision to be

presently discussed, do not support appellants' contention that the protests in question herein should have been permitted to have been withdrawn.

Further, there is no real substance to appellants' contention that the filings of the protests herein had no legal nor jurisdictional effect, and that the only action herein having any legal and jurisdictional effect was the board's action in finding and determining upon the hearing that sufficient protests had been filed. While section 34312 of the Government Code invests the board with discretion in establishing the boundaries and determining the size and shape of the proposed city, no discretion is vested in the board under section 34311 in determining whether sufficient protests have been filed with it.

Said section 34311 merely specifies in substance that, if the board finds and determines that written protests in sufficient amount have been filed with it by owners of land within the proposed boundaries, the board's jurisdiction shall cease. The board's function and duty in regard thereto is similar to its function and duty under sections 34303-34308 with respect to the petition; its hearing is limited to determining whether sufficient, qualified protests have been filed; and it clearly has the duty under section 34318 to call an election, unless sufficient, qualified protests have been filed to defeat its jurisdiction and duty so to proceed.

Similarly, the right to withdraw protests herein cannot be justified on the theory followed in *City of Sedalia* v. *Montgomery, supra,* that the jurisdiction granted under sections 34303-34311 was only a conditional jurisdiction which did not become complete until the lapse of the period within which protests could be filed. As previously discussed, the pertinent California statutes (said Gov. Code, §§ 34303-34311) are clearly of the type mentioned in *In re Mosher, supra,* and *Hawley* v. *City of Butte, supra,* which grant complete jurisdiction to the board "unless [it is] deprived of that jurisdiction by a sufficient protest" i.e. which grant complete jurisdiction subject only "to be defeated by filing a [sufficient] protest."

(*Chester* v. *Einarson,* 76 N.D. 205 [34 N.W.2d 418, 434-435, 35 N.W.2d 137]) is the sole case which supports appellants' position. The established rule in North Dakota with respect to withdrawals of or from initiating petitions was the same as our rule in California, namely: that the signers of an initiating petition may not, after filing, withdraw their names from such a petition.

Notwithstanding, it was later held in *Chester* v. *Einarson* that, with respect to remonstrances (i.e. objecting petitions), withdrawals from said remonstrances could be made until the board, with which the initiating petition and the remonstrances had been filed, had passed upon the sufficiency thereof.

While said decision is deserving of consideration, it is not particularly persuasive since the court gave no substantial reasons for its ruling. The case also involved the question as to the period within which such remonstrances could be filed. It was held that, under the statutes involved therein, such remonstrances could be filed until the close of the hearing noticed for presentation of objections; and it was simply assumed and held without any particular discussion that withdrawals could be made during the same period in which such remonstrances could be presented.

Our conclusion that said sections 34310-34311 cannot be construed as permitting the withdrawal of protests after filing is further compelled by an examination of the actions of the Legislature in amending acts in closely related fields.

In 1949, the Legislature amended section 2930 of the Streets and Highways Code (relating to written protests to proposed municipal acquisitions and improvements) by inserting in the first sentence thereof "and protests are not withdrawn so as to reduce the same to less than a majority" and by specifically adding the following sentence to said section, "Any such protest may be withdrawn by the owner making the same, in writing, at any time prior to the conclusion of the protest hearing held pursuant to the law under which it is proposed to proceed or any adjournment thereof."

Also in 1949, the Legislature made a comparable amendment to section 5221 of the Streets and Highways Code (relating to hearing of protests under "The Improvement Act of 1911"), and again specifically provided that protests could be withdrawn at any time prior to the conclusion of the protest hearing. Further in 1951 in codifying the "District Investigation Law of 1933," the Legislature in enacting section 58700 of the Government Code also specifically provided therein that protests could be withdrawn at any time prior to the time set for hearing of the protests or any continuances thereof.

The second paragraph of section 34311 of the Government Code (providing in essence that, as previously noted, if upon the final hearing the board finds and determines that written protests have been filed representing 51 per cent of the total

assessed value of land within the boundaries of the proposed incorporation, the board's jurisdiction shall cease) was not added until 1957 by an amendment of said section 34311.

 It must, therefore, be presumed that the Legislature, in amending said section 34311 without providing that filed protests could be withdrawn, was not ignorant of its previous acts in amending sections 2930 and 5221 of the Streets and Highways Code and in adding section 58700 of the Government Code and in specifically providing therein for withdrawals of protests. (*Estate of Simpson*, 43 Cal.2d 594, 600 [275 P.2d 467, 47 A.L.R.2d 991].) Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed. (45 Cal.Jur.2d, § 179, p. 679; *Estate of Garthwaite*, 131 Cal.App. 321, 326 [21 P.2d 465].) It must also be presumed that the Legislature did not perform an idle act in amending said sections 2930 and 5221 of the Streets and Highways Code and in adding section 58700 to the Government Code. (*Stafford* v. *Realty Bond Service Corp.*, 39 Cal.2d 797, 805 [249 P.2d 241].)

 The only conclusion which reasonably may be drawn is that the Legislature, in not making any provisions for withdrawal of filed protests to a proposed incorporation when it amended said section 34311 of the Government Code in 1957, did not intend to authorize the withdrawals of such protests.

The judgment is accordingly affirmed.

Ashburn, J., concurred.

FOX, P. J.—I dissent.

The majority opinion draws no factual distinction between the "petition" cases and "protest" cases, such as the instant proceeding. Yet this factual distinction is the determining consideration in this controversy. A valid petition, when filed, is an integrated document containing the names of a sufficient number of qualified persons to confer jurisdiction on a designated public body to commence the proper proceedings. Thus a petition initiates jurisdiction. On the other hand, a protest is the act of a single person, filed at any time within a statutory protest period. In and of itself, this single act has no jurisdictional significance. Not until the time for filing has expired and the board determines the numerical sufficiency of all the protests to defeat its jurisdiction do the individual

protests take on a legal significance. (*Board of Education of Putnam County* v. *Board of Education of Hartsburg,* 112 Ohio St. 108 [146 N.E. 812].) Thus the controlling date with relation to protests is the final day for filing, not the day upon which the protest is actually filed, unless the two dates coincide. It is not until such final date for filing that the protest list is complete. (See *Board of Education of Putnam County* v. *Board of Education of Hartsburg, supra.*) Likewise, it is not until after the final filing date that the board acts to determine the sufficiency of the protest. Under these circumstances, the analogy is clear; i.e., the filing of the individual protest has no more significance than the placing of a name on a petition before that petition is filed. It is not until the final filing date is past that the protest list is complete as an integrated whole. In effect, the final filing date is the "filing date" for the completed list of protests. Thus, until such date, names should be allowed to be added and withdrawn at will. (*State* ex rel. *Tegt* v. *Circuit Court,* 255 Wis. 501 [39 N.W.2d 450]; *Wilson* v. *Borough of Collingswood,* 80 N.J.L. 626 [77 A. 1033].)

There is no valid purpose to be served by refusing to allow the withdrawal of protests before the final filing date. No official action will have been taken relative to the protests other than filing them prior to that time. Thus, no detrimental effect upon any governmental agency can occur. On the other hand, no valid reason appears why a protestant should not be allowed to withdraw a protest hurriedly made, on inadequate facts or upon an erroneous belief. To refuse to allow the withdrawal of an ill-advised protest prior to the time that such protest could have any legal effect, is to defeat the very purposes of the law allowing protests. The obvious purpose of protests is to assure that actions will not be taken against the *will* of the majority. If a protestant changes his mind, the proposed action will no longer be against his *will,* yet to refuse to allow withdrawal is to irrevocably fix his voice in the proceedings. Until such time as the protest list is complete, there can be no justification for such an arbitrary rule.

Therefore, the "petition" cases relied upon by the majority do not meet the issues here presented. Those cases are based upon the theory that a petition, once filed, creates the jurisdiction of the board or body and sets in motion the machinery of government. Under those circumstances, the effect of withdrawals after filing would be highly detrimental to the efficient functioning of the public bodies involved and withdrawals

after the filing of a petition may properly be disallowed. However, as above pointed out, no comparable situation exists in this case. I would reverse the judgment.

Appellants' petition for a hearing by the Supreme Court was denied July 12, 1960. Peters, J., was of the opinion that the petition should be granted.