[Civ. No. 10146.   Third Dist.   Dec. 15, 1961.]

REED A. COCKERILL et al., Plaintiffs and Respondents, v. CITY OF REDDING et al., Defendants and Appellants.

Joseph H. Redmon, City Attorney, for Defendants and Appellants.

Daniel S. Carlton for Plaintiffs and Respondents.

PIERCE, J.—Appellants City of Redding and its council appeal from a judgment on a petition for certiorari by respondent landowners, ordering termination of proceedings under the Annexation Act of 1913. (Gov. Code, § 35100 et seq.) Prior to 1961 this act, which provides that protests filed by a majority (in assessed value) of landowners will defeat the annexation, contained no express provision authorizing the city council to permit withdrawal of protests once filed. Here, however, the city council permitted such withdrawals.

The sole question is whether in annexation proceedings municipalities possess implied power to permit withdrawal of filed protests.

In 1960 appropriate annexation proceedings (called the "South City Annexation") were taken by the City of Redding up to and including adoption by the city council of its resolution of intention to call a special election (Gov. Code, § 35116) giving notice to objecting landowners to file their protests. (Gov. Code, § 35117.) After certain protests had been received (involving 49.84% of assessed land value—within .16% of enough to defeat the annexation) the hearing was continued pursuant to Government Code section 35120. During the intervening period other protests were received and also requests were filed to withdraw protests.

On October 3, 1960, the continued hearing date, the total of protests filed had reached 51.69 per cent but, if withdrawals

of protests were to be allowed, the remaining protests then were 30.68 per cent. Government Code section 35121 provides that if protests are made by owners equal to one-half of the value of all lands in the territory no further proceedings shall be taken. Otherwise the city legislative body calls and holds a special election by the registered voters within the territory. (Gov. Code, §§ 35122, 35134.)

Here the city council granted all requests for withdrawal of protests and, disallowing these, finding that the total of assessed valuation protest was less than 50 per cent, it called the election.

Prior to the date of the election, these proceedings were brought in the superior court, resulting in the judgment adjudging the annexation proceedings terminated as a matter of law and nullifying the election call.

Subsequently a stay order was granted by this court, the effect of which permitted the city to hold its election pending this appeal. The election was held, the votes were canvassed and a majority of the electors voted in favor of the annexation. The city council thereupon adopted an annexation ordinance, the filing of which by the Secretary of State has been withheld by order of this court and on stipulation of the parties pending the determination of the appeal.

The 1961 Legislature has added an express provision for the withdrawal of protests in annexation proceedings by the enactment of a new section. (Gov. Code, § 35012 [ch. 1604, Stats. 1961, p. 3431].) It provides as follows:

"Any person making a protest to an annexation or to an annexation election may withdraw his protest at any time prior to final adjournment of the hearing on protests by filing with the clerk of the legislative body of the annexing city a written statement that he withdraws his protest. If the withdrawal is made during the hearing the written statement may be filed with the legislative body or with the clerk."

This section went into effect September 15, 1961, and, being prospective in its terms, is, of course, inapplicable here.

The question, however, is *whether this enactment made new law or merely clarified existing law*. Should we hold here that, although the legislature had never granted express power to permit withdrawal of protests until 1961, it had been its intent to give implied power all along? We think not.

The general rule is that, in annexation proceedings, the statute constitutes the measure of the power to be exercised by the city council (*American Distilling Co.* v. *City*

*Council, City of Sausalito,* 34 Cal.2d 660, 664 [212 P.2d 704, 18 A.L.R.2d 1247]) ; ▓▓ and we also approach interpretation of this statute with the fundamental rule that " 'a municipal corporation possesses and can exercise the following powers and no others: 1. Those granted in express words; 2. Those necessarily or fairly implied in or incident to the powers expressly granted; 3. Those essential to the declared objects and purposes of the corporation—*not simply convenient, but indispensable.* ▓▓ Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied.' " *(Von Schmidt* v. *Widber,* 105 Cal. 151, 157 [38 P. 682] ; 1 Dillon on Municipal Corporations, 4th ed., sec. 89 ; *Tax Factors, Inc.* v. *County of Marin,* 20 Cal.App.2d 79, 87 [66 P.2d 666].)

No case has been cited construing Government Code section 35120 here involved as to the right of protest withdrawal. But *Strauss* v. *Board of Supervisors* (May, 1960) 181 Cal.App.2d 133 [5 Cal.Rptr. 294], held that no implied legislative authorization exists, permitting a municipality to allow withdrawal of protests to the proposed incorporated territory. That case construed Government Code section 34311, the language of which is almost identical with section 35120 here to be construed.

It was a two-to-one decision. The majority opinion, written by Justice Kincaid, cites a number of cases holding that names cannot be withdrawn from petitions in initiative, referendum, annexation and similar proceedings. *(Uhl* v. *Collins,* 217 Cal. 1 [17 P.2d 99, 85 A.L.R. 1370], initiative; *Rogers* v. *Board of Directors of City of Pasadena,* 218 Cal. 221 [22 P.2d 509], annexation; *Beecham* v. *Burns,* 34 Cal.App. 754 [168 P. 1058], recall; *Knowlton* v. *Hezmalhalch,* 32 Cal.App.2d 419 [89 P.2d 1109], referendum; *Sweetwater Fruit Co.* v. *City Council,* 126 Cal.App.2d 655 [272 P.2d 828], annexation.)

After discussing these "petition" cases, *Strauss* holds that although names may be withdrawn from a petition before the petition is filed, they cannot be afterward.

The Strauss majority opinion rejected appellants' argument (which is also the contention here) that "petition" cases justify a statutory construction opposite from "protest" cases as regards the right of withdrawal because (1) a petition involves a single filing or at most a limited number of filings whereas protests are filed piecemeal, and (2) that whereas the filing of a petition confers jurisdiction, the filing of a protest has *no* jurisdictional effect. The court granted that these were

differences but could perceive no distinguishing consequences. The dissenting opinion by Presiding Justice Fox argues emphatically that these differences *are* distinctive, saying, at page 143:

". . . No official action will have been taken relative to the protests . . . no detrimental effect upon any governmental agency can occur . . . no valid reason appears why a protestant should not be allowed to withdraw a protest hurriedly made, on inadequate facts or upon an erroneous belief."

The majority opinion, however, takes the position, applied to "petition" cases and "protest" cases alike, that to permit withdrawals after filing "and the work of securing signatures abandoned" would be to make the system "unworkable." It also places great weight on the argument that the Legislature in other instances has *expressly* granted the power of withdrawal of protests, indicating that whenever the Legislature wants to grant the right it does so by unequivocal language.*

It says on page 142:

". . . Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed. (45 Cal.Jur.2d § 179, page 679; *Estate of Garthwaite,* 131 Cal.App. 321, 326 [21 P.2d 465].) It must also be presumed that the Legislature did not perform an idle act in amending said sections 2930 and 5221 of the Streets and Highways Code and in adding section 58700 to the Government Code. (*Stafford* v. *Realty Bond Service Corp.,* 39 Cal.2d 797, 805 [249 P.2d 241].)"

Appellants make no argument distinguishing the protest withdrawals sought to be accomplished in *Strauss* and the protest withdrawals here involved. Instead, they ask us to reexamine the reasoning which impelled the court in *Strauss* to reach the conclusion it did. We might hesitate to do so under the doctrine of stare decisis alone, which has been stated to be particularly forceful with respect to decisions construing the same or similar statutes (13 Cal.Jur.2d 651, and cases cited), although not inflexibly so (see Mendelson: *Mr. Justice Frankfurter on the Construction of Statutes,* 43

---

*Express right of withdrawal of protests has been given in Streets and Highways Code, section 2930 (relating to protests to proposed municipal acquisitions and improvements); to section 5221 of that code (relating to protests under the Improvement Act of 1911); in Government Code, section 58700 (relating to protests to the formation of various types of districts under the "District Investigation Law of 1933").

Cal.L.Rev. 652). Our hesitation would be longer here because of the denial by the Supreme Court of a hearing in *Strauss* which, while not necessarily implying an endorsement of its reasoning, would seem to imply an approval of the *Strauss* conclusion (*Cole* v. *Rush,* 45 Cal.2d 345, 351 [289 P.2d 450, 54 A.L.R.2d 1137]), if it may be deemed an "important question of law." (Rules on Appeal, rule 29.) However, even more compelling than stare decisis is our belief that both the *conclusion* in *Strauss* and its *reasoning* are sound.

Notwithstanding that the Legislature in 1961 has *now* clearly declared its policy (by enacting Gov. Code, § 35012) to permit city councils in annexation proceedings to accept requests for protest withdrawals, there seem very good reasons why previous legislatures should be deemed to have held to the contrary view. Where protest withdrawals are permitted up to the very adjournment of a hearing, the organized opposition to annexation faces a discouraging uncertainty until the last moment as to whether their protests have been fruitful or futile; while proponents of annexation will be encouraged during the same period to importune individual protesting landowners to change their minds.

With the majority in *Strauss* we have difficulty distinguishing "petition" and "protest" withdrawals from the standpoint of the effect on jurisdiction. The jurisdiction created by filing a petition is only tentative, subject to nullification either by majority protest or a majority "no" vote by registered voters in the territory. It merely marks the first of a number of steps towards completed annexation with the filing of protest only another step following in close sequence.

We believe that the strongest argument against implying a legislative intent authorizing cities to permit protest withdrawal is that, when the California Legislature has wanted to grant such authorization it has, in the other instances cited in *Strauss,* done so *expressly.* And now by the enactment of Government Code section 35012 in 1961 it has done so expressly in annexation protest withdrawals. The language of this enactment gives no indication that it was for clarification purposes. On the contrary, it indicates the creation of a new right.

█ █ In *Butcher* v. *Brouwer,* 21 Cal.2d 354 [132 P.2d 205]. at 358, the court says:

". . . The amendment of a statute is evidence of an intention to change the rule which has been stated by the courts in applying its provisions (*Hoffman* v. *McNamara,* 102 Cal.App.

280, 285 [282 P. 990] ; and see, Crawford, Statutory Construction [1940], § 304, p. 618, and cases cited), . . .''

Finally, we think that the forceful contentions which appellants make for the allowance of protest withdrawals are policy arguments properly to be addressed to a legislature to persuade it so to legislate, rather than to a court seeking only to determine what the Legislature intended by what it has said. Reiterating and applying fundamental principles, the Legislature, prior to 1961, had not expressly granted power to a municipality to permit withdrawal of annexation protests; such power is not, in our opinion ''necessarily or fairly implied in or incident to powers expressly granted;'' nor is it ''essential to the declared objects and purposes'' of the city. In any event there is much more than a ''reasonable doubt concerning the existence of the power.'' (*Von Schmidt* v. *Widber*, 105 Cal. 151 [38 P. 682].)

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 7, 1962.