[Civ. No. 26355.   Second Dist., Div. Two.   Sept. 13, 1962.]

WELDON J. DAILY, Plaintiff and Respondent, v. CITY OF POMONA et al., Defendants and Appellants.

Arlo E. Rickett, Jr., City Attorney, and Robert C. Gustaveson, Deputy City Attorney, for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

Richards, Watson, Smith & Hemmerling and Robert G. Beverly as Amici Curiae on behalf of Plaintiff and Respondent.

ASHBURN, J.—Appeal from judgment directing issuance of peremptory writ of mandate requiring appellant City of Pomona and its officers to terminate all proceedings for annexation to said city of inhabited territory designated as "Brea Canyon Addition."

The proceeding was initiated by resolution of January 3, 1961, which was followed by resolution 61-47 passed on March 6, 1961, fixing a time and place for protests by property owners. As later amended this resolution fixed June 5, 1961, at 8 p. m. as the time for hearing protests. Section 35120, Government Code, as it then stood, read in pertinent part as follows: "At any time not later than the hour set for hearing objections to the election, any owner of property within the territory may make a written protest against the election. If at the time set for hearing objections to the election, there are insufficient protests to terminate further proceedings, supplemental protests may be filed within 10 days thereafter. The protest shall state the name of the owner of the property affected and the street address or other description of the property sufficient to identify it on the last equalized assessment roll. . . . As used in this article, 'owner' means the owner as shown on the last equalized assessment roll, or the person or persons entitled to be shown as owner on the current assessment roll who shall be deemed the owner, or where such land is subject to a recorded written agreement to buy, the purchaser under such agreement to buy shall be deemed the owner. . . ." (Stats. 1959, ch. 1867, p. 4425.) Section 35121 then provided: "At the time set for hearing protests, or to which the hearing may have been continued, the city legislative body shall hear and pass upon all protests so made. If it finds that protest is made by the owners of one-half of the value of the territory proposed to be annexed as shown by the

last equalized assessment roll, or if protest is made by public and private owners equal to one-half of the value of the territory, further proceedings shall not be taken. . . ." (*Id.* pp. 4425-4426.)

The said meeting for hearing protests was held at the specified time but prior thereto written protests had been filed by owners of more than half of the value of territory within said annexation as shown by the last equalized assessment roll of Los Angeles County; they represented over 66 per cent of the assessed value of the said territory. The hearing was continued to June 12, 1961, and then further continued to June 19, 1961. At the meeting on the 19th two property owners in the annexation area who had previously filed protests undertook to withdraw the same and the city council purported to permit such withdrawals and to determine that such withdrawals resulted in the total protests amounting to less than half of the value of the territory within the annexation area. The council then adopted a motion terminating the protest hearing and overruling protests; also introduced was Ordinance No. 1747 calling a special election pertaining to said annexation; it was adopted at the council meeting of June 26, 1961. On August 14, 1961, Weldon J. Daily, respondent herein, filed a petition in the superior court seeking a writ of mandate requiring discontinuance of said annexation proceedings. Issuance of same having been ordered by the judgment entered below, this appeal followed.

The question in this court is whether section 35012, Government Code, which became effective on September 15, 1961, was merely declaratory of the law existing prior thereto or whether it worked a change in the law. That section reads: "Any person making a protest to an annexation or to an annexation election may withdraw his protest at any time prior to final adjournment of the hearing on protests by filing with the clerk of the legislative body of the annexing city a written statement that he withdraws his protest. If the withdrawal is made during the hearing the written statement may be filed with the legislative body or with the clerk."

The case of *Strauss* v. *Board of Supervisors,* 181 Cal.App. 2d 133 [5 Cal.Rptr. 294] (decided May 20, 1960; hearing in Supreme Court denied July 12, 1960), bears directly upon the present problem. It arose under section 34311, Government Code,[1] pertaining to incorporation of a municipality.

---

[1]Said section 34311 provides in part as follows: "The board shall hold a hearing. . . . If upon the final hearing the board of supervisors finds

Its language is substantially the same as section 35121 pertaining to annexation which is quoted above. This division of this court held by a two to one vote that protests in such statutory proceedings could not be withdrawn, primarily because there was no statutory authority for withdrawal. The majority opinion concluded as follows: "The only conclusion which reasonably may be drawn is that the Legislature, in not making any provisions for withdrawal of filed protests to a proposed incorporation when it amended said section 34311 of the Government Code in 1957, did not intend to authorize the withdrawal of such protests." (P. 142.)

That this ruling correctly interpreted the law existing prior to September 1961, has been reaffirmed by the decision of the District Court of Appeal for the Third District in *Cockerill* v. *City of Redding,* 198 Cal.App.2d 108 [17 Cal.Rptr. 754] (hearing in Supreme Court denied on February 7, 1962). That case arose under the Annexation Act of 1913 (Gov. Code, § 35100 et seq.), as did the one at bar, and involved proceedings had in 1960. The court affirmed a judgment ordering termination of annexation proceedings, which judgment was based upon rejection of a claim of right to withdraw protests previously filed. The court said, in part: "The question, however, is *whether this enactment made new law or merely clarified existing law.* Should we hold here that, although the legislature has never granted express power to permit withdrawal of protests until 1961, it had been its intent to give implied power all along? We think not.

"The general rule is that, in annexation proceedings, the statute constitutes the measure of the power to be exercised by the city council (*American Distilling Co.* v. *City Council, City of Sausalito,* 34 Cal.2d 660, 664 [212 P.2d 704, 18 A.L.R.2d 1247]); and we also approach interpretation of this statute with the fundamental rule that ' "a municipal corporation possesses and can exercise the following powers and no others: 1. Those granted in express words; 2. Those necessarily or fairly implied in or incident to the powers expressly granted; 3. Those essential to the declared objects and purposes of the corporation—*not simply convenient, but indispensable.* Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the

and determines that written protests of the proposed incorporation have been filed with the board, signed by the owners of land within the boundaries of the proposed incorporation representing 51 percent of the total assessed valuation of the land within said boundaries, the jurisdiction of the board of supervisors shall cease; no election shall be called. . . .''

power is denied.'' ' [Citations.] '' (Pp. 110-111.) Concerning the *Strauss* case: ''The majority opinion, however, takes the position, applied to 'petition' cases and 'protest' cases alike, that to permit withdrawals after filing 'and the work of securing signatures abandoned' would be to make the system 'unworkable.' It also places great weight on the argument that the Legislature in other instances has *expressly* granted the power of withdrawal of protests, indicating that whenever the Legislature wants to grant the right it does so by unequivocal language.'' (P. 112.) ''However, even more compelling than stare decisis is our belief that both the *conclusion* in *Strauss* and its *reasoning* are sound. Notwithstanding that the Legislature in 1961 has *now* clearly declared its policy (by enacting Gov. Code, § 35012) to permit city councils in annexation proceedings to accept requests for protest withdrawals, there seem very good reasons why previous legislatures should be deemed to have held to the contrary view. Where protest withdrawals are permitted up to the very adjournment of a hearing, the organized opposition to annexation faces a discouraging uncertainty until the last moment as to whether their protests have been fruitful or futile; while proponents of annexation will be encouraged during the same period to importune individual protesting landowners to change their minds. . . . We believe that the strongest argument against implying a legislative intent authorizing cities to permit protest withdrawal is that, when the California Legislature has wanted to grant such authorization it has, in the other instances cited in *Strauss,* done so *expressly.* And now by the enactment of Government Code section 35012 in 1961 it has done so expressly in annexation protest withdrawals. The language of this enactment gives no indication that it was for clarification purposes. On the contrary, it indicates the creation of a new right.'' (P. 113.) ''Reiterating and applying fundamental principles, the Legislature, prior to 1961, had not expressly granted power to a municipality to permit withdrawal of annexation protests; such power is not, in our opinion 'necessarily or fairly implied in or incident to powers expressly granted;' nor is it 'essential to the declared objects and purposes' of the city. In any event there is much more than a 'reasonable doubt concerning the existence of the power.' (*Von Schmidt* v. *Widber,* 105 Cal. 151 [38 P. 682].)'' (P. 114.)

It is presumed that any statutory amendment works a change in the law. *Whitley* v. *Superior Court,* 18 Cal.2d 75,

78 [113 P.2d 449] : "In construing statutory language, it is fundamental, if possible, to give effect to each sentence, phrase and word thereof. . . . The fact that the legislature in 1939 amended section 657, subdivision 7, so as to impose a ten day limitation for filing such order for new trial, where no time restriction existed at all prior to this recent enactment, demonstrates the legislature's intent to change the pre-existing law, and it must be presumed that it was intended to change the statute in all the particulars where there is a material change in the language of the amended provision." Moreover, "[t]he legislature is presumed to have known of these prior decisions and to have considered them at the time of the amendment." (*Id.*, p. 78.)

The enactment of section 35012 occurred at the next session of the Legislature following the *Strauss* decision. The immediate inference is that the Legislature intended to reverse the policy of the law as declared in that case. Counsel for appellant argue that the amendment was merely declaratory of existing law and urge as a basis for such construction information found in " 'Interim Assembly Committee on Municipal and County Government for 1960,' which is to be found in Assembly Interim Committee Reports 1959-1961, Volume 6, No. 16, pages 7 to 63 as found in Bound Volume 'Appendix to Journal of the Assembly—California—regular session, 1961, Vol. 1.' " We find their review of the same unconvincing. Nothing in the record suggests a legislative intention to declare the *Strauss* decision erroneous, but merely a desire to bring the law into harmony with the legislative idea of what it ought to be.

The instant proceeding having been conducted prior to the 1961 enactment of section 35012, the *Strauss* and *Cockerill* decisions control and require an affirmance of the judgment.

Counsel for appellant argue the effect of the following language of section 35120, "If at the time set for hearing objections to the election, there are insufficient protests to terminate further proceedings, supplemental protests may be filed within 10 days thereafter." In view of the holding upon the controlling point in the case we find that this problem is no longer before us and hence do not discuss it.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.